[No. 1,044.]

# THE STATE OF NEVADA, RESPONDENT, *v.* JOHN T. PRITCHARD, APPELLANT.

DISCHARGE OF JUROR AFTER JURY IS SWORN—IMPANELMENT OF ANOTHER JUROR—FORMER JEOPARDY.—Where the incompetency of a juror was first made known to the court after the juror was sworn and the jury completed: *Held*, that, upon the facts stated in the opinion, the court was authorized to then discharge the juror, and to impanel another juror in his stead, and that these facts furnished no evidence to support defendant's plea of former jeopardy.

INCOMPETENCY OF JUROR—CONSCIENTIOUS SCRUPLES—CIRCUMSTANTIAL EVIDENCE.—A juror who states that he would not convict a defendant, in a capital case, on circumstantial evidence, is an incompetent juror.

DISCHARGE OF JUROR, NECESSITY FOR, AFTER JURY IS SWORN.—Courts are legally authorized to discharge a juror or a jury, after the jury has been sworn to try the case, whenever, from any cause, such a necessity exists as to make it apparent that the ends of justice would otherwise be defeated.

CHALLENGE TO JUROR—WHEN TAKEN—SECTION 334, CRIMINAL PRACTICE ACT, CONSTRUED.—Under the provisions of section 334 of the criminal practice act, whenever it appears from the examination of a juror, upon his *voir dire*, that he is disqualified, the challenge must be interposed before he is sworn; but these provisions have no application to a case where the disqualification or incompetency of the juror is not, without any fault of the challenging party, discovered until after the jury is completed.

DISCHARGE OF ONE JUROR NO NECESSITY FOR DISCHARGING JURY.—The discharge of an incompetent juror after the jury is sworn, does not create a necessity for the discharge of the eleven remaining competent jurors.

INSTRUCTIONS—PROVINCE OF JURY.—Where all the facts are agreed upon by counsel, and the only question is, whether, upon the agreed facts, the defendant had been in jeopardy: *Held*, that the court did not invade the province of the jury by giving an instruction, that there was no evidence to sustain a plea of former jeopardy.

APPEAL from the District Court of the Second Judicial District, Ormsby County.

The facts are stated in the opinion.

*N. Söderberg,* for Appellant:

I. The discharge of the juror Dorsey was a bar to a subsequent trial. Jeopardy attaches when the jury is complete and has been impaneled and sworn to try the cause. (Constitution of Nev., art. 1, sec. 8; 1 Comp. L. 1957, 1958, 2020, 2021; 1 Bish. Crim. L. 1013–1019; *Stewart* v. *State*, 15 Ohio St. 155; *Mounts* v. *State*, 14 Ohio, 295, 306; *Dobbins* v. *State*, Oh. St. 493; *Baker* v. *State*, 12 Id. 214; *Ward* v. *State*, 1 Humph. (Tenn.) 253; Cooley's Const. Lim. 327; 3 Ohio St. 238–241; 3 Co. Inst. 110; 7 Port. (Ala.) 207; *O'Brian* v. *Commonwealth*, 9 Bush (Ky.), 333; *People* v. *Hunckeler*, 48 Cal. 331; *McFadden* v. *Commonwealth*, 23 Pa. St. 12; 1 Whart. Crim. L. sec. 589; *Klock* v. *People*, 2 Park. Cr. R. 676, 685; *Queen* v. *Hepburn*, 7 Cranch, 297; *Commonwealth* v. *Tuck*, 20 Pick. 365; *People* v. *Barrett*, 2 Cai. 304; *King* v. *Sutton*, 8 Barn. & Cress. 417; *People* v. *Scoggins*, 37 Cal. 676, 680; *Gillespie* v. *State*, 8 Yerg. (Tenn.) 508; 2 Hawk. P. C. Ch. 47, 51; *State* v. *Rover*, 10 Nev. 388.)

II. In the absence of a statutory prohibition, such as exists in Nevada, against the withdrawal of a juror, after the jury is complete, the court may, perhaps, in cases of

necessity for causes occurring after the jury is sworn, at any time before verdict, put an end to the trial by discharging a number of the jury. But the inability of the state to convict defendant of the crime charged, does not constitute such necessity. Independently of the statute, therefore, the allowance of the challenge to Dorsey for implied bias, after the completion of the jury, was illegal, and entitled defendant to an immediate acquittal.

III. If Dorsey was not a qualified juryman, it was but cause of challege for implied bias, and could have been by the state or prisoner, and must have been made before the jury was sworn. The statute does not authorize either party to challenge a juror after the jury is complete. Discharging or breaking up a jury contrary to law, against his protest, without a verdict, is, in the law, an acquittal of defendant. (*People* v. *Scoggins*, 37 Cal. 676, 680; 1 Comp. L. 1957, 1958; *Mima Queen and Child* v. *Hepburn*, 7 Cranch, 290; 2 Com. Dig. 322, title "Challenge—Peremptory," letter C.)

IV. Had Dorsey remained on the jury, defendant would not have been entitled to a new trial by reason of Dorsey's conscientious scruples, no matter what verdict had been rendered. (*Jones' case*, 1 Leigh (Va.), 599; *Whitehead* v. *Wells*, 29 Ark. 99; *Woodward* v. *Dean*, 113 Mass. 297.)

V. Dorsey's unwillingness to find defendant guilty of murder in the first degree upon circumstantial evidence was no ground of challenge. It is not shown that the evidence relied upon by the prosecution was circumstantial, nor that defendant was guilty of murder in the first degree.

VI. There was no adjudication by the court upon the subject of the supposed necessity of discharging the juror Dorsey. Its judgment should have been expressed in some form upon the record. A discharge of a jury, without good cause shown on the record, operates as an acquittal. (*State* v. *Walker*, 26 Ind. 346; *Shaffer* v. *State*, 27 Id. 131; *State* v. *Redman*, 17 Iowa, 329; *State* v. *Vaughan*, 29 Id. 286; *People* v. *Cage*, 48 Cal. 323.)

VII. The court erred in overruling defendant's motion to discharge the eleven jurors remaining after Dorsey was ex-

cused. (1 Whart. Crim. L., sec. 589, and cases cited, note x; *Reid* v. *State,* 50 Ga. 556; 1 Bish. Crim. Pr., sec. 948.)

VIII. The jury should have been sworn to try defendant's plea of former acquittal. Until so sworn they were not qualified to try said plea. (*Lang* v. *State,* 58 Ala. 385.)

IX. The court erred in charging the jury to find for the people upon defendant's second plea, for this was charging the jury upon matters of fact. (Art. 6, sec. 12, Const.; *State* v. *Tickel,* 13 Nev. 502; *State* v. *Frazer,* 14 Id. 210; 1 Comp. L., sec. 931.)

*M. A. Murphy,* Attorney General, for Respondent:

I. Before a person accused of a felony can claim that he has been placed in jeopardy, he must show to the court that a jury of twelve good and lawful men had been selected and sworn; that they were free from any of the statutory disqualifications, and had been charged with the case.

II. Where a juror entertains such conscientious opinions as would preclude him from finding the defendant guilty where the punishment is death, it is the duty of the court, in the due administration of the law, to exclude the juror. (*Walters* v. *People,* 32 N.Y. 160; *Weller* v. *State,* 40 Ala. 331; *Gross* v. *State,* 2 Carter, 329; *Commonwealth* v. *Lesher,* 17 Serg. & R. 155; *Williams* v. *State,* 3 Kelly, 453; *Lewis* v. *State,* 9 Smed. & M. 115; *Martin* v. *State,* 16 Ohio, 364; *O'Brien* v. *People,* 36 N. Y. 276; *Greeley* v. *State,* 60 Ind. 141.)

III. A juror, who after he is sworn in chief and has taken his seat, is discovered to be incompetent to serve, may, in the exercise of a sound discretion, be set aside by the court. (13 Wend. 351; *People* v. *Wilson,* 3 Park. Crim. 199; *State* v. *Allen,* 46 Conn. 531.)

IV. Though neither party has a right of challenge after a juror is sworn, it is in the discretion of the court to protect the administration of justice by investigation, at any stage of the trial, on objection to the impartiality of a juror, and by withdrawing the case from the jury if any juror is found unfit to sit thereon. (*U. S.* v. *Morris,* 1 Curtis' C. C. 23.)

V. An alien will not be permitted to sit on a jury, and a

challenge can be interposed at any time before verdict. (*Stone* v. *People*, 2 Scam. 326; *Hill* v. *People*, 16 Mich. 351.)

VI. A member of the grand jury which found an indictment against the prisoner is not a competent juror,. and either party may object to him acting as such at any time before the verdict is rendered. (*Dilworth* v. *Commonwealth*, 12 Gratt. 689; *Reg.* v. *Ward*, 10 Cox Cr. L. C. 573; *Watkins* v. *State*, 60 Ga. 601.)

VII. A juror who has formed or expressed an opinion is disqualified, and can be challenged off at any time before the verdict is rendered. (*State* v. *Tuller*, 34 Conn. 280.)

VIII. Where, in the course of a trial, the judge was informed that a juror had fraudulently procured himself to be selected for the purpose of acquitting the prisoner, and the juror was withdrawn: held, there was no jeopardy. (*State* v. *Bell*, 81 N. C. 591.)

IX. The prohibition in article 1, section 8, of the state constitution, that "no person shall be subject to be twice put in jeopardy for the same offense," means, that no person shall be tried the second time for the same offense after a trial by a competent and regular jury, upon a good indictment, whether there be a verdict of acquittal or conviction and judgment rendered thereon. (*Jones* v. *The Queen*, Crim. L. Mag., Nov. 1880, 766.)

X. The answers of the juror, Dorsey, were made in response to the questions of the defendant's counsel. This was a reopening of the question of the qualification of the jurors at the instance of the defendant, and was a waiver of their being sworn.

XI. The allowance of a challenge for implied bias is not the subject of an exception. (Crim. Pr. Act, sec. 241; *State* v. *Larkin*, 11 Nev. 325; *People* v. *Murphy*, 45 Cal. 142; *People* v. *Atherton*, 51 Id. 495; *People* v. *Vasquez*, 49 Id. 560; *People* v. *Cotta*, Id. 166.)

By the Court, HAWLEY, J.:

There is a growing conflict of the authorities in the United States as to the true meaning of constitutional provisions similar to ours that "no person shall be subject to

be twice put in jeopardy for the same offense." (Const., art. 1, sec. 8.) Some of the courts hold that it means no more than the common law plea of *autrefois acquit*, while others contend that it goes farther, and that jeopardy attaches when the jury is completed and sworn to try the case.

Upon the facts presented by this appeal we do not feel called upon to express our views upon this subject, although it has been elaborately argued by appellant's counsel. It may, and will, be admitted, for the purposes of this opinion, that jeopardy attaches when the jury is sworn to try the case. All the authorities which adhere to this view of the question admit, as has been decided in this state, that there are exceptions to the rule " based upon urgent necessity." (*State* v. *Rover*, 10 Nev. 398.) The only question, therefore, which we are asked to determine is, whether or not a necessity existed for the discharge of the juror Dorsey after the jury was complete and sworn to try the case, and whether it was proper for the court to impanel another juror in his stead.

The facts, as they appear of record, are as follows: "That on the twenty-third day of July, A. D. 1880, in the regular course of said trial of defendant, * * * twelve jurors had been duly examined upon their *voir dire*, accepted by plaintiff and defendant, and severally duly sworn * * * to well and truly try the matter in issue between the said state of Nevada and the said J. T. Pritchard, and a true verdict render therein according to the law and the evidence * * *; that the juror, J. C. Dorsey, had been carefully examined on his *voir dire* touching his qualifications to serve as a juror in said cause, and had stated on such examination that he was not opposed to capital punishment, and that he had, or entertained, no such conscientious scruples or opinions as would preclude him from finding a verdict of guilty in a case where the punishment would be death if the evidence warranted such verdict; that after said twelve jurors had been sworn to try said cause * * * and before any evidence had been introduced, * * * defendant's counsel, by leave of court, asked the said jury the

following question, to wit: 'Since you were examined by me before, touching your qualifications to serve as jurors, has anything happened, or occurred, to your recollections, to render you improper jurors in this case to your knowledge?' Whereupon the said juror Dorsey arose and said that he was unwilling to find a verdict of murder in the first degree on circumstantial evidence, and made the following statement: * * * 'I have this to say: It would take very strong evidence for me to bring in a verdict of conviction. Some of the jurors were asked on the same ground I take now. I was not asked; that is, I would hardly bring in a verdict of murder in the first degree unless it was very positive and personal evidence.'

"Question by Mr. Woodburn (of counsel for the prosecution)—Would you render a verdict of guilty upon circumstantial evidence alone, without any eye-witness being put upon the stand, as to the commission of the crime? Answer—No, sir.

"Ques.—Suppose there was no witness to the transaction, no person who saw the defendant shoot Humphrey Symons (and) take his life, and his guilt depended upon circumstantial evidence, would you render such a verdict, a verdict in the first degree, when you knew the penalty was death? Ans.—No, sir; I would not. I wasn't examined upon that subject before.

" Mr. Woodburn—We challenge him on the ground that he is opposed to capital punishment.

"The Court—You will be excused.

" Mr. Söderberg (counsel for defendant)—We object to his being excused, and except to the ruling of the court.

"The court overruled the objection, allowed the challenge, and excused the juror. * * * That no other reason existed for discharging said juror except the one hereinbefore stated. That neither plaintiff, defendant, or said juror had been guilty of any intentional fraud or deception in procuring the swearing of said jurors to try said cause, except so far as the answers made by the said juror on his *voir dire* may operate as such legal fraud."

After the juror Dorsey was excused, the court proceeded,

against the objection of defendant, to impanel another juror. Before such juror was impaneled defendant moved the court to discharge the remaining eleven jurors, who had been sworn to try said cause, upon the ground "that the withdrawal of said Dorsey operated as a destruction of said jury." The court denied the motion. After the juror Dorsey was discharged, the defendant interposed a special plea of former jeopardy. The court instructed the jury "that there was no evidence to sustain a verdict in favor of defendant upon his said special plea of former jeopardy." The defendant was convicted of murder in the second degree.

If the juror Dorsey had made the same statement before he was sworn as a juror, as he did afterwards, it would have been the duty of the court to have then and there discharged him. The statute, in clear and explicit terms, declares that any juror entertaining such conscientious opinions "shall neither be permitted nor compelled to serve as a juror." (Crim. Pr. Act, sec. 340; 1 Comp. L. 1964.)

If circumstantial evidence was introduced, and it was clearly sufficient to warrant a verdict of guilty, it would have been the duty of the juror to find such a verdict. He said, in effect, that he could not discharge his duty in this respect; that he would not find a verdict of guilty, where the death penalty might be enforced, in a case of circumstantial evidence, no matter how convincing and clear such testimony might be. He was an incompetent juror. His answers were very similar to those given by a juror in *The People* v. *Ah Chung*. In that case the court said: "It clearly appears from the examination of the juror that he would not convict, in a capital case, on circumstantial evidence; and we think that the challenge was properly sustained. There are many cases in which the evidence on the part of the prosecution is entirely circumstantial, and to hold that a party is a competent juror who will not convict on such evidence would in many cases defeat the ends of justice." (54 Cal. 402.) In the language of the supreme court of Illinois: "It would be but a mockery of justice to go through

the forms of a trial with such a person upon the jury."
(*Gates* v. *People*, 14 Ill. 435.)

This brings us to the discussion of the vital question:
Was the court authorized to discharge the juror, against the
objection of the defendant, after the jury was sworn to try
the case?   In considering this question, it must continually
be borne in mind, that Dorsey was, on account of his con-
scientious opinions, incompetent to serve as a juror; that
his incompetency was not made known to the court, or
counsel, until after he was sworn; that his incompetency
was of such a character that it could not be waived; that it
was unnecessary for the prosecution to interpose any chal-
lenge to the juror, and that the statute makes it the impera-
tive duty of the court not to *permit* any such person to serve
as a juror.   It must be remembered that it was not the
fault of the prosecution, nor of the court, that the incompe-
tency of the juror was not discovered until after the jury
was sworn, and that the knowledge of the juror's incompe-
tency was brought out by the voluntary act of defendant's
counsel.

In *Ex parte Maxwell* (11 Nev. 436) it was held, that sec-
tions 396 and 397 of the criminal practice act (1 Comp. L.
2020, 2021) should be construed with reference to the con-
stitutional restriction in respect to second jeopardy, and
that under these provisions the trial courts are invested
with power, in the exercise of a sound legal discretion, to
discharge a jury after the cause has been submitted to them,
without the consent of the defendant, and without the dis-
charge constituting a legal bar to a future trial, in all cases
of manifest necessity, whether such necessity arises from
some physical cause  occurring during the trial or delibera-
tion of the jury, or from the inability of the jury to agree
upon a verdict; that this power is not one of absolute, un-
controlled discretion, but must be exercised in accordance
with established legal rules, and is always subject to review
by the appellate court.

In *O'Brian* v. *The Commonwealth*, the supreme court of
Kentucky, in construing a similar statute, said: "It could
not have been intended by the section *supra* (248) that the

power of the court to discharge a jury in cases of necessity is restricted to the causes enumerated in that section; if so, all other causes arising during the progress of the trial showing a clear and manifest necessity for the discharge of the jury must be disregarded. This section of the code, in our opinion, was not intended to define all the causes upon the happening of which this power could be exercised, but was only intended as an adoption of the legal rule, that a case of actual necessity must exist before a jury can be discharged." (9 Bush, 337.)

All the authorities agree "that where the jury has been discharged upon necessity the prisoner may again be put upon trial." (*State* v. *Nelson*, 26 Ind. 368.) But what shall be considered as constituting such a necessity as to justify courts in exercising this power is not so well settled. The power is one, as before stated, of judicial discretion to be exercised soundly, not arbitrarily, according to the peculiar facts and circumstances of each particular case.

The most common of the class denominated as physical necessities that have been held to justify the courts in discharging a jury, although it has been sworn, is where the presiding judge becomes so ill as to be unable to proceed with the trial (*Nugent* v. *State*, 4 Stew. & P. 72); or where a juror is prevented by sickness from attending court during the trial. (*U. S.* v. *Haskell*, 4 Wash. 402; *Hector* v. *State*, 2 Mo. 166; *State* v. *Curtis*, 5 Humph. 601; *Commonwealth* v. *Fells*, 9 Leigh, 613.)

There is another class of cases where the courts have been justified in discharging a jury upon what is termed *the necessity of doing justice,* which arises from the duty of the court to prevent the obstruction of justice by guarding its administration against all fraudulent practices, such as tampering with the jurors after they are sworn (Foster's Crown Law, 27; *State* v. *Wiseman*, 68 N. C. 203); or the fraudulent introduction into the panel of a perjured juror, who at the instance of the defendant has procured himself to be selected on the jury for the purpose of acquitting the prisoner. (*State* v. *Bell*, 81 N. C. 591.)

From an examination of the numerous authorities, bear-

ing more or less upon this subject, we think it may safely be announced, as a general rule, that courts are legally authorized to discharge a juror or a jury, after the jury has been sworn to try the case, whenever, from any cause, such a necessity exists as to make it apparent that the ends of justice would otherwise be defeated.

It is for this reason, as well as upon the ground of physical necessity, that courts have always acted in discharging a jury whenever it clearly appears that they are unable to agree upon a verdict. The general principle is well stated by the supreme court of Ohio in the case of *Dobbins* v. *State:* "It is the right of the state, and one of the most solemn and responsible of its duties, to punish crime; and it is the absolute right of any one accused of crime to demand 'a speedy public trial by an impartial jury,' and a verdict, declaring his guilt or innocence, according to the due course of law. The one is indispensably necessary to the safety of the community and the preservation of peace and order, and the other for the protection of the innocent, and to prevent the oppression which might otherwise be practiced by those having charge of state prosecutions. The problem has always been to preserve intact both of these important rights; and the object has been completely accomplished by holding the accused liable to answer until, in the regular course of judicial proceedings, the tribunal charged with the issue, without molestation or interference, has had the fullest and amplest opportunity to pass upon the question of his guilt; and by making every interference on the part of the government by which a verdict is prevented, while a reasonable hope remains that one may be rendered, an absolute bar to his further prosecution. If a verdict can not be obtained upon one trial, another may be lawfully had; and the unavoidable delay which ensues is the fault of no one. For the better protection of the accused, the law requires unanimity in the jury before a verdict can be rendered; but to allow, on the one hand, the ignorance, perversity, or even honest mistake of a single juror to paralyze the administration of justice, and turn loose upon the community the most dangerous offenders, or, on the other, to

allow the government to trifle with the constitutional safeguards of the accused, would equally subvert the foundation principles upon which the criminal code is administered." (14 Ohio St. 501.)

The supreme court of the United States, in discussing this question, said: "We think that in all cases of this nature the law has invested courts of justice with the authority to discharge a jury from giving any verdict, whenever in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated." (*United States* v. *Perez*, 9 Wheat. 580.) Applying this principle to the case in hand, we think the court was justified in discharging the juror Dorsey.

How can it, consistently, be said that no necessity existed for his discharge? He was, as we have already shown, an incompetent juror. By an inadventure upon his part he had kept from the court and counsel all knowledge of his incompetency until after the jury was sworn to try the case. This was in effect, although not so intended by the juror, a fraud upon the court, and it was its plain duty, when the facts came to its knowledge, to protect itself from the "honest mistake" of the juror, and not to allow the administration of justice to be defeated by keeping such a person upon the jury.

Let us suppose for a moment that in answer to the question of defendant's counsel the juror had said: "When I was asked whether I had ever expressed any unqualified opinion as to the guilt or innocence of the defendant, I did not fully understand the question, and hence answered it erroneously. The truth is that I have expressed the opinion that the defendant is guilty of murder, and ought to be hanged. I entertain this opinion now, and it is so firmly fixed in my mind that no evidence will remove it." Can there be any question as to what the court should do in such a case? No. It would be the duty of the court to immediately discharge the juror. Why? Because it would be a mere farce, a mockery of justice, to compel the defendant to be tried by any juror entertaining such an opinion. Now the

state, as we had occasion to declare in the *State* v. *McClear,* "has certain rights as well as the prisoner. The people need protection as well as the defendant who is accused of crime." (11 Nev. 61.) Hence, it necessarily follows that when it clearly appeared, to the satisfaction of the court, from the answers given by the juror, that he would not convict the defendant, however clear and convincing the proofs might be, if the same depended upon circumstantial evidence, it was equally the duty of the court, as in the case last supposed, to immediately discharge the juror, and for the same reason. The juror had rendered himself incompetent. His mind was not in such a condition as to enable him "well and truly to try," as his oath required him to do, "the matter in issue" between the state and the defendant, "and a true verdict render therein according to the law and the evidence."

The principle of the statute is, that any person entertaining such an opinion is unfit to be a juror in such a case, because his conscience will not permit him to find the defendant guilty when death will be the consequence of the verdict, however conclusive the evidence may be. Such a person is unfit; he has prejudiced the question; he has made up his verdict without hearing the evidence, and ought to be excluded upon common law principles. "It would be a solemn mockery to go through the forms of a trial with such a jury, or even with one such juror. The prisoner is sure to be acquitted, independent of the question of guilt or innocence. It would be a misnomer to call such a proceeding a trial." (*People* v. *Damon,* 13 Wend. 354.)

We have not overlooked the provisions of section 334 of the criminal practice act, which declares that the challenge to an individual juror "must be taken when the juror appears, and before he is sworn, but the court may for good cause permit it to be taken after the juror is sworn, and before the jury is completed." (1 Comp. L. 1958.)

The state, as well as the defendant, is required to interpose its challenges before the jury is completed. This provision of the statute must be complied with. Whenever it appears from the examination, upon his *voir dire,* that a

juror is disqualified by reason of the existence of any fact which is made a ground of challenge, the juror must be challenged as specified in the statute, otherwise the party, whether the state or the defendant, will be considered as having waived the right of challenge.

But it can not, with any sound reason, be urged that this provision of our statute has any application to a case, like the present one, where the disqualification or incompetency of the juror, although a ground of challenge, is not, without any fault of the challenging party, discovered until after the jury is completed.

In *State* v. *Tuller*, immediately after the jury had retired from the court-room to consider their verdict, and before the verdict was rendered, a member of the bar informed defendant's counsel that one of the jurors (not naming him) had, prior to the commencement of the trial, expressed to him the opinion that defendant was guilty of the crime charged against him. The attorney did not bring this fact to the notice of the court until after the rendition of the verdict, when he moved the court to arrest the judgment on the ground of the bias of the juror. This motion was reserved for the advice of the supreme court.

The supreme court, in deciding this motion, said that if the facts had been brought to the knowledge of the court before verdict, it "would have sent for the jury and taken the case from them without hesitation," and declared the rule to be that if counsel "knows of an objection to the panel before the verdict is rendered, and in time to prevent the verdict, and obtain a rehearing before another jury, and does not avail himself of the opportunity, he must be holden to a waiver of the objection. Otherwise he would be permitted to lie by and speculate upon the chances of a verdict, and that can not be tolerated." (34 Conn. 294.)

In *State* v. *Allen*, 46 Conn. 531, each of the jurors, before being accepted and sworn, was examined in behalf of the state and defendant as to his qualifications. Upon the second day of the trial, and after witnesses had been examined in behalf of the state, the counsel for the defendant stated to the court that they had been informed and be-

lieved that one of the jurors in the case was disqualified, for the reason that before being sworn as such juror he had expressed the opinion that the accused was guilty of the crime charged in the indictment, and asked the court to suspend the trial and hear such witnesses as they were prepared to offer to prove such disqualification. The court, upon hearing the evidence, found as a fact that the juror had, before he was sworn, expressed an opinion that the defendant was guilty of the crime of murder in the first degree, and thereupon declared that said juror was disqualified to sit as a juror upon the trial of the case. · Counsel for defendant then asked for time in which to consider what course they would adopt. The court granted them until the next day, when they offered to waive the disqualification of the juror and proceed with the trial. The court refused to accept such waiver and discharged the jury. The supreme court held that the offer of defendant's counsel came too late; that "the court could not then be required to reinstate the discharged juror upon the panel," and sustained the action of the court in discharging the jury.

In *Steward* v. *The State* (15 Ohio St. 155), after the jury was regularly sworn, the opening statement of counsel made, and a witness had been sworn and placed upon the stand, one of the jurors arose and said that he was one of the grand jurors which found the indictment against the defendant. Whereupon the plaintiff's attorneys "asked defendant's attorneys what they intended to do. And, in answer, the defendant's attorneys asked the attorneys for the plaintiff what they intended to do. · Thereupon the court inquired of the plaintiff's attorneys what they intended to do. To which they replied that they would like to have the court suggest what they had better do. The court then asked the defendant's attorneys what they intended to do, and defendant's attorneys replied that they intended to stand upon the defendant's rights, and could not, nor would not do anything, or take any course to waive the defendant's rights in any respect whatever." After some further legal skirmishing and delay, "the court then asked defendant's attorneys if they objected to proceeding with

the jury. They replied that they did. The court then dis-
charged said jury." The action of the court was sustained
upon the ground that the discharge of the jury was the
necessary result of sustaining the objection interposed by
the defendant himslf, and hence did not take place without
his consent; but was an act done at his own instance, and
would not therefore operate as an acquittal, nor bar a further
prosecution.

In this connection we deem it proper to say, as a matter
of practice, that we would have justified the court had it
refused to allow defendant's counsel to ask the jurors the
general question as to their qualifications after the jury was
complete. Counsel should not, in our opinion, have been
allowed to fish, out of season, for some point upon which to
lay a foundation for an exception, without, at least, first
baiting his hook in a proper manner. He should have been
required, in advance, to show to the court, by affidavit or
otherwise, that he had reason to believe, and did believe,
that one, or more, of the jurors was disqualified or was
incompetent to try the case upon some ground of which he
was not aware at the time of the completion of the jury, and
to state the facts upon which his belief was founded. We
hesitated for some time, before writing this opinion, whether
it would not be a sufficient reply to the argument of appel-
lant's counsel, upon this branch of the case, to say that the
discharge of the juror Dorsey was brought about by the
voluntary and irregular act of defendant's counsel in
asking a question that ought not, under the circumstances,
to have been permitted by the court. But, owing to the
earnestness of the arguments of the respective counsel, as
well as the interest and importance of the issues presented,
we deem it best to dispose of the question upon its merits.
Especially, as from each and every legal standpoint that could
reasonably be taken, the authorities sustain the action of
the court in discharging the juror Dorsey.

But the question, in regard to which we at first enter-
tained some doubt, and which is by no means as well set-
tled, is, whether the court was justified in impaneling

another juror in the place of the juror Dorsey, instead of discharging the jury.

In considering the facts of this case, in connection with the authorities to which our attention has been called, we have arrived at the conclusion that this action of the court was correct. The remaining eleven jurors were competent. No objection was urged against them. They had been selected, agreed upon, and accepted in the mode provided by law. No testimony had been offered. It seems to us that the discharge of an incompetent juror did not create a necessity for the discharge of the eleven remaining competent jurors.

In *People* v. *Damon, supra,* which was a trial for murder, after the fourth juror had been sworn in chief, and taken his seat, the district attorney inquired of him whether he had conscientious opinions against finding a verdict of guilty for an offense punishable with death. The counsel for the prisoner objected that the inquiry was too late; that after the juror was sworn in chief he could not be objected to. Upon this branch of the case the supreme court said: "The regular practice is to challenge jurors as they come to the book to be sworn, and before they are sworn; but I apprehend this is matter of practice, and may be departed from in the discretion of the court. The object is to give the prisoner a fair trial; and if it be made to appear, even after a juror is sworn, that he is totally incompetent by reason of having prejudged the case, it is not then too late to set him aside and call another. * * * Hawkins intimates there are authorities the other way; but I apprehend no authority can be necessary to sustain the proposition, that the court may and should, in its discretion, set aside all persons who are incompetent jurors, *at any time before evidence is given.*" (To the same effect see *Dilworth* v. *The Commonwealth,* 12 Gratt. 689; *Lewis* v. *The State,* 9 S. & M. 119.)

In *People* v. *Wilson,* 3 Park. Crim. R. 202, after several of the jurors had been challenged and set aside, and one had been sworn, a juror named Haight was called, and was challenged by the prosecution on the ground that he was opposed to capital punishment, and could not conscien-

tiously convict any one on the charge of murder. The court, after hearing the testimony, decided adversely to the challenge, and Haight was sworn and took his seat. After another juror had been sworn, and several others set aside, Haight addressed the court, and said that he had misunderstood the question previously propounded to him; that he had given a wrong answer; that he desired to correct himself and say "that he could not under any circumstances convict one on a charge for murder." The district attorney moved that the juror should be set aside. This motion was opposed by the prisoner's counsel. The court, in passing upon this question, said: "The position is a novel one, but it does not, I think, present an insurmountable difficulty. It was correctly held in the case of *The People* v. *Damon* (13 Wend. 351), that a juror who, after he is sworn in chief and has taken his seat, is deemed to be incompetent to serve, may, in the exercise of a sound discretion, be set aside by the court at any time before evidence is given, and that this may be done even in a capital case, and as well for cause existing before as after the juror was sworn. In that case, however, the juror had not been previously challenged; whereas in that now before us a challenge had been interposed, and a trial has been had, and the juror has been found by the court to be competent. So long as that finding stands, the juror can not be discharged; and yet it would be a mere mockery of justice to suffer the trial to proceed under such circumstances, and with such a juror. The maxim that 'what necessity compels, it justifies,' must, I think, apply in such a novel case. Our decision that the juror was competent must be vacated; the challenge to him must be opened, and the trial of it must be resumed. This was done; the juror repeated his last statement, and the court pronounced the challenge true, and the juror was set aside."

In some of these cases the juror was set aside before the jury was complete, in which respect they differ from the case at bar; but the principles announced tend to support the conclusions we have reached.

In *Stone* v. *The People*, after the jury was sworn, and after

three witnesses had been examined by the prosecution, it was discovered that one of the jurors was an alien. This juror was discharged and another called and impaneled in his stead. There is a statute in the state of Illinois authorizing the courts, in case a juror was, for any reasonable cause, discharged, "to cause others, if necessary, to be summoned and sworn in his or their stead." But the case was decided, and the remarks which we quote were made, upon general principles that are, in our opinion, directly applicable to this case and are correct. The court said: "The rule, at common law, undoubtedly is, where a juror is withdrawn by reason of sickness or any other cause, or where the death of any one ensues during the trial, the remaining jurors are to be discharged, and the prisoner, unless he consents to have the eleven remain, must be tried by another jury. And why is it so? Because the jury has been complete; the whole twelve were competent and qualified jurors. In the cases cited the remaining eleven jurors have been discharged, because one of the competent parts of the jury has been unable to perform its functions, not by any act of the parties, or of the court, but by physical causes beyond the control of both. Not so in the present case. For want of sufficient caution, an error has occurred. Now, shall it be said the court possessed no power to correct the error without prejudice to either party, but that in correcting it another shall be committed? Not so. Why is a court, for the ends of justice, and where manifest necessity exists for the act, authorized to discharge a jury? And if a whole jury may in such case be discharged, why not set aside a person improperly selected and sworn? No injustice has been done; no law has been violated. The rights of the prisoner have not been infringed; the course is agreeable to justice, and we can perceive no wrong in the course adopted." (2 Scam. 337.)

It necessarily follows from the views we have expressed, that the court did not err in instructing the jury that there was no evidence to sustain a verdict in favor of defendant upon his plea of former jeopardy. The instruction did not invade the province of the jury in deciding the facts of the

case. All the facts were agreed upon and stipulated by counsel, and the only question was whether, upon the agreed facts, the defendant had been in jeopardy. The instruction was correct.

We do not believe that any of the evil results suggested by appellant's counsel will ever flow from the effect of this decision. We are not unmindful of the rights of persons accused of crime, and have never hesitated, as the records of this court will show, to interfere in their behalf whenever any of their substantial rights have been infringed upon; but we are unable to see how this decision can ever be used to oppress or injure them or the state. We believe that it is in harmony with nearly all of the modern decisions, and that it accords with the letter and spirit of the criminal practice in this and other states, which has, as is expressed by the supreme court of Iowa (*State* v. *Roth,* 17 Iowa, 336), "sought to prevent persons convicted of crime from escaping deserved punishment on refined subtleties and black-letter precedents where no substantial interest or right has been prejudiced."

We are of opinion that the record shows "good cause" for the action of the court; that the jurors were properly sworn to try all the issues raised in this case, and that the defendant is not entitled to be discharged or to have a new trial.

The judgment of the district court is affirmed.