CARL DEAN WHEELER, PETITIONER, v. THE SEC-OND JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA, RESPONDENT.

No. 5033

June 3, 1966 415 P.2d 63

*Carl F. Martillaro,* and *Virgil A. Bucchianeri,* of Carson City, for Petitioner.

*Harvey Dickerson,* Attorney General, *William J. Raggio,* District Attorney, and *Herbert F. Ahlswede,* Deputy District Attorney, Washoe County, for Respondent.

# OPINION

By the Court, ZENOFF, D. J.:

Petitioner was charged with murder. He was brought to jury trial in the Second Judicial District in September 1965, and after extensive jury deliberation the foreman informed the trial judge that one of the jurors revealed that he had personal information about the case, that the juror thought he had observed the defendant and deceased together in a Reno bar. This led that juror to believe that the two were close personal friends, which would then effect the credibility of defendant's claim of self defense. Obviously, by colloquy between the court and the foreman in open court this was a crucial point since the jury then stood at 11 to 1 for acquittal.[1]

The following dialogue ensued between the court and the foreman of the jury when the court called for the jury to appear in the courtroom:

"THE COURT: Based upon the information which you have now conveyed to me, and taking into consideration the information that one of the jurors has now conveyed to you, is it impossible for you to reach a verdict based solely on the evidence presented in court?

"THE FOREMAN: Yes, your Honor, it is.

"THE COURT: The Court will declare a mistrial.

"MR. MARTILLARO: Just a minute, your Honor.

\* \* \* \* \*

"THE FOREMAN: Your Honor, it is possible I may have misunderstood your question.

"THE COURT: Is it impossible for you to reach a verdict under the circumstances where information has been conveyed to you by one of the jurors?

---

[1]Counsel stipulated that the jury stood 11 to 1 for acquittal. That information does not otherwise appear in the record. The prejudice in subjecting the defendant to another jury, in the event the mistrial was proper, becomes obvious.

"THE FOREMAN: No, your Honor, it is not impossible. I thought you asked me if it were possible and I replied—if you are asking me if it is possible for us to reach a decision based on the facts, yes, I think we can do that based on the facts presented so far in this case.

"THE COURT: And yet information and facts not received here in court have been conveyed to you by one of the jurors?

\* \* \* \* \*

"THE FOREMAN: Yes, sir.

"THE COURT: And that this juror can likewise do the same? That is, the juror who conveyed this information to you can do the same?

"THE FOREMAN: The juror who conveyed this information could not, by his own testimony, make a fair and just decision.

"THE COURT: Well, then, you can't reach a verdict based upon the evidence. I declare a mistrial.

"MR. MARTILLARO: Just a minute, just a minute.

\* \* \* \* \*

"I propose to voir dire that particular juror as to why—when he was selected to sit as a juror on this case he said that any preconceived ideas as to the guilt or innocence could be set aside by him and he could decide the evidence in this case solely upon the basis of the evidence brought out here.

"THE COURT: That will not be permitted."

Counsel for the defendant requested permission to question the particular juror but the court refused to permit him to do so. Defendant's counsel argued further for the same permission but the court again refused and stated as follows:

"\* \* \* The fact that this kind of information (referring to the juror's private information) was conveyed to eleven of the jurors by one of the jurors regardless of what any voir dire may disclose that he wasn't sure that he knew him and whatnot, in itself is certainly grounds for mistrial. The fact is that he presented in the jury room information that was gleaned outside of this courtroom during the course of this trial."

Again, the court stated: "Also, I think the record will show that the foreman of the jury said that this

one juror could not change his mind and yet they could reach a verdict. And what he obviously meant in view of the message is that they wanted an alternate." Over the objection of defense counsel the court granted the mistrial and subsequently set a new trial date.

Petitioner now brings a petition for a writ of prohibition to prevent a second trial, alleging that petitioner has once been put in jeopardy.[2]

1. Nevada has ruled that "whenever the accused has been placed upon trial, upon a valid indictment, before a competent court, and a jury duly impaneled, sworn, and charged with the case, he has then reached the jeopardy, from the repetition of which this constitutional provision protects him, and, therefore, the discharge of the jury before verdict, unless with the consent of the defendant, or the intervention of some unavoidable accident, *or some overruling necessity*, operates as an acquittal, but the inability of the jury to agree upon a verdict, is recognized as creating such a necessity." Ex parte Maxwell, 11 Nev. 428 (1876). (Emphasis supplied.)

Since the defendant did not consent, but rather objected, the law therefore requires a manifest necessity before discharging a jury before a verdict. See also State v. Pritchard, 16 Nev. 101 (1881), and State v. Eisentrager, 76 Nev. 437, 357 P.2d 306 (1960), where such manifest necessity must appear upon the record. Also 38 A.L.R. 706; 77 Harv.L.Rev. 1276 (1964).

The controlling element of the instant case is NRS 175.310 requiring a juror to be sworn and examined as a witness in the presence of the parties when he possesses facts about the case of his own knowledge.[3] The trial court refused defendant's request so to do.

---

[2]Nev. Const., Art. 1, Sec. 8. "No person shall be subject to be twice put in jeopardy for the same offense."

[3]NRS 175.310. "If a juror has any personal knowledge respecting a fact in controversy in the case, he must declare the same in open court, during the trial. If, during the retirement of a jury, a juror declare any fact which could be evidence in the cause, as of his own knowledge, the jury must return into court. In either of these cases, the juror making the statement must be sworn as a witness, and examined in the presence of the parties."

In Yarbrough v. State, 90 Okla.Crim. 74, 210 P.2d 375 (1949), the trial judge refused to allow examination of an allegedly biased juror and the Court of Criminal Appeals of Oklahoma held: "The defendant's right to have the jury pass upon his case was one which should not have been set aside except for a very cogent and compelling reason, and in such circumstances, the defendant and his counsel had the right to have the information allegedly known by the juror declared in open court, so that they would know just what it was, and in case of appeal, this court would know whether there was a necessity for the discharge of the jury.

"It is our conclusion that where the court determines that a mistrial should be declared before the case is finally submitted to the jury because it is disclosed that a juror has knowledge of certain controversial facts material to the issues involved, that the court should have the juror examined in open court in the presence of the parties in accordance with the statute, and after such examination, if the trial court concludes in the exercise of sound judicial discretion that a mistrial should be declared, that the essential facts upon which the discharge is based and the finding of the court thereon must be entered in the record."

It is apparent here that while the trial judge knew the basis of the juror's bias, no opportunity was given to the defendant to determine by examination of the juror whether or not the bias could be overcome or was groundless. Examination might have developed that the juror was mistaken in his identity of the deceased (no photographs of deceased had been presented at the trial) and, thus, the jury could have continued its deliberations.

We cannot call this a hung jury because the basis for the jury's failure to agree was the information received or used by the holdout juror that was obtained outside of the trial.

The requirements of "overruling necessity" were not met and, we must therefore uphold defendant's defense

of former jeopardy. See Downum v. United States, 372 U.S. 734 (1963).

2. The objection of double jeopardy had never been presented to the trial court. Ordinarily, a reviewing court will not grant prohibition until an objection has been made and overruled in the lower court since it is assumed that any valid objection properly brought to the attention of the court will prevail, and the writ will be unnecessary. Sayegh v. Superior Court, 44 Cal.2d 814, 285 P.2d 267 (1955). See also Baird v. Superior Court, 204 Cal. 408, 268 P. 640 (1928); Hanrahan v. Superior Court, 81 Cal.App.2d 432, 184 P.2d 157 (1947); Citizens Utility Co. v. Superior Court, 31 Cal.Rptr. 316, 382 P.2d 356 (1963). There is, however, authority for the proposition that such a rule was adopted by reviewing tribunals as a matter of respect for and consideration of the lower court and to aid in minimizing, if not preventing, unnecessary litigation. Monterey Club v. Superior Court, 48 Cal.App.2d 131, 119 P.2d 349 (1941). Also, Rescue Army v. Municipal Court, 28 Cal.2d 460, 171 P.2d 8 (1946).

While we prefer the issue first be raised in the trial court, direct application for prohibition to this court is proper, for once an alternative writ has issued, dismissing on a technicality only delays the case further. Rodriquez v. Superior Court, 158 P.2d 954 (1945), aff'd 27 Cal.2d 500, 165 P.2d 1 (1946).

Writ of prohibition granted. The defendant shall forthwith be released from custody and the charge dismissed.

THOMPSON, J., concurs.

MOWBRAY, D. J., dissenting:

At defendant's trial for murder it developed that during the jury deliberations one member of the jury stated he had personal knowledge respecting the facts in controversy which had not been submitted in open court during the trial and which information he presented to

his fellow jurors during their deliberations. The trial court over defense counsel's objection declared a mistrial.[1]

Assuming arguendo that defense counsel's objection and demand to "voir dire" that juror was sufficient to place the trial court on notice of the procedure to be followed in cases of this instance, as outlined in NRS 175.310, did the trial court abuse its discretion in declaring a mistrial? I think not.

The provisions of NRS 175.310 are at best vague and ambiguous. This is true to such an extent that the California Legislature has amended its counterpart to said statute, Penal Code Section 1120, in order to clarify it:

"If a juror has any personal knowledge respecting a fact in controversy in a cause, he must declare the same in open Court during the trial. If, during the retirement of the jury, a juror declares a fact which could be evidence in the cause, as of his own knowledge, the jury must return into Court. In either of these cases, the juror making the statement must be sworn as a witness and examined in the presence of the parties *in order that the court may determine whether good cause exists for his discharge as a juror.*" (Emphasis added.) Stats. 1965, ch. 299, Sec. 144, operative Jan. 1, 1967.

Before this amendment was adopted there was no method to determine how to apply the statute since it had never been interpreted by the Nevada courts and its counterpart has been cited only once by the California courts and therein without clarification, People v. Sarazzawski, 161 P.2d 934 (Cal. 1945), and alluded to twice by that State's courts without citation, People v. Young, 69 P.2d 203 (Cal. 1937), and People v. Kobey, 234 P.2d 251 (Cal. 1951).

Before amendment the section did not make it clear whether the examination in the presence of the parties is for the purpose of determining if "good cause" exists for the juror's discharge or whether this examination is for the purpose of obtaining the juror's knowledge as evidence in the case. The amendment eliminates the

---

[1]The acquittal vote of 11 to 1 was not known to the court nor counsel until after the trial and later became a part of this record at the time of oral argument pursuant to the stipulation of counsel.

ambiguity in its provisions and provides assurance that the juror's examination is to be used solely to determine whether "good cause" exists for his discharge.

It was reasonable for the court to declare a mistrial in order that the trial could take place before another jury. If the court had done otherwise, it would have placed the juror-witness in an anomolous position. He manifestly cannot weigh his own testimony impartially. The party affected adversely by the juror's testimony is placed in an embarrassing position. He cannot freely cross-examine or impeach the juror for fear of antagonizing the juror—and perhaps his fellow jurors as well. And if he does not attack the juror's testimony, the other jurors may give his testimony undue weight.

Accordingly, the trial judge did not abuse his discretion and the defendant should be re-tried:

"Where, for reasons deemed compelling by the trial judge, who is best situated intelligently to make such a decision, the ends of substantial justice cannot be attained without discontinuing the trial, a mistrial may be declared without the defendant's consent and even over his objections, and he may be retried consistently with the fifth amendment." Gori v. United States, 367 U.S. 364, 368 (1961).

The Writ of Prohibition should be denied.

Because of the death of BADT, J., the Governor designated Honorable John Mowbray, of the Eighth Judicial District Court, to sit in his place.