UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 93-1131

UNITED STATES OF AMERICA,

Appellee,

v.

DOMENIC SIMONETTI

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. D. Brock Hornby, U.S. District Judge]

Before

Torruella, Selya and Cyr,

Circuit Judges.

Edward S. MacColl, by Appointment of the Court, with whom

Marshall J. Tinkle and Thompson, McNaboe, Ashley & Bull, were on

brief for appellant.
Margaret D. McGaughey, Assistant United States Attorney,

with whom Jay P. McCloskey, United States Attorney, and Jonathan

A. Toof, Assistant United States Attorney, were on brief for

appellee.

July 20, 1993

TORRUELLA, Circuit Judge. Defendant Domenic Simonetti

was charged with conspiracy to possess cocaine with intent to

distribute it in violation of 21 U.S.C. 841(a)(1),

841(b)(1)(C), and 846. After the trial began, the district court

severed Simonetti's case from that of his codefendant and

declared a mistrial over Simonetti's objection. Simonetti later

moved to dismiss the indictment, alleging retrial would

constitute double jeopardy in violation of his constitutional

rights. The district court denied the motion and we affirm.

Prior to trial, the government released to Simonetti

redacted reports of government interviews with Peter Shoureas.

The reports referred to drug transactions between Shoureas and

various other individuals. At trial, the government sought to

prove that Domenic Simonetti (also referred to as "Nick")

conspired with Shoureas and others to possess and distribute

cocaine. While cross-examining Shoureas, Simonetti's attorney,

Mr. Lilley, discovered that the unedited reports showed that the

conspiracy arguably involved another individual who was also

referred to as "Nick." On different occasions during his drug

trafficking career, Shoureas apparently conspired with Nicholas

Skinsacos and later, defendant Domenic Simonetti. Skinsacos'

name was redacted in the government's reports, however. This new

information offered potentially exculpatory evidence for

Simonetti because the defense could have attempted to show that

the references to "Nick" implicated Skinsacos, not Simonetti.

Attorney Lilley moved to dismiss the case on the basis

of Brady v. Maryland, 373 U.S. 83 (1963), because the government

failed to disclose this exculpatory evidence before trial. In

addition, Lilley informed the court that he had a conflict of

interest because he previously represented Skinsacos. The

district court determined that the government did not

intentionally violate its disclosure duty by deleting Skinsacos'

name from the Shoureas reports, but agreed that the references

should have been provided to the defense.1 As a remedy, the

court ordered disclosure of all references to Skinsacos. The

court concluded that the delayed disclosure did not prevent the

defense from effectively presenting its case and thus denied the

motion to dismiss, finding dismissal unwarranted by Brady or its

progeny. See United States v. Devin, 918 F.2d 280, 289 (1st Cir.

1990) (delayed disclosure does not warrant dismissal where

defendant can effectively use information belatedly disclosed).2

Attorney Lilley's conflict of interest with Skinsacos

remained, however. The district court recognized that a

legitimate defense strategy would attempt to show that references

to "Nick" implicated Skinsacos, not Lilley's present client,

Simonetti. Lilley's ability to represent Simonetti was impaired,

however, because Maine Bar Rules 3.4(e)3 and 3.6(l)(1) prohibit

1 The district court deemed the oversight careless and
specifically found no bad faith on the part of the prosecutor.

2 Simonetti does not specifically challenge this ruling.

3 Maine Code of Professional Responsibility Rule 3.4(e)
provides:

A lawyer shall not accept employment
adverse to a former client without that
client's informed written consent if such

-3-

the use of confidential information obtained in a prior

representation to the detriment of the prior client or for the

benefit of another party without informed written consent of the

prior client.4 Consequently, Lilley could not have vigorously

defended Simonetti without a waiver from Skinsacos. Cf. United

States v. Marren, 919 F.2d 61, 63 (7th Cir. 1990).

The district court granted a continuance for several

days in an effort to resolve the conflict of interest. Over

Simonetti's objection, the court eventually severed Simonetti's

case from his codefendant5 and concluded that manifest necessity

justified declaring a mistrial. Simonetti moved to dismiss the

case on double jeopardy grounds and the district court denied the

motion, finding that a new trial would not violate the Double

Jeopardy Clause. This appeal followed.

The Double Jeopardy Clause of the Fifth Amendment

new employment involves the subject
matter of the former employment or may
involve the use of confidential
information obtained through such former
employment.

4 Maine Code of Professional Responsibility Rule 3.6 (l)(1)
provides in relevant part:

[A] lawyer shall not, without the
informed written consent of the client,
knowingly reveal a confidence or secret
of the client; use such confidence or
secret to the disadvantage of the client;
or use such confidence or secret to the
advantage of the lawyer or a third
person.

5 Counsel for codefendant argued that further delay would
prejudice his client.

-4-

provides that no person shall be twice placed in jeopardy for the

same offense. Retrial after a properly declared mistrial does

not automatically offend the Double Jeopardy Clause. Arizona v.

Washington, 434 U.S. 497, 505 (1978). Where mistrial is declared

over defendant's objection, retrial is permissible only if the

mistrial was justified by "manifest necessity." Id.; United

States v. P rez, 22 U.S. (9 Wheat.) 579 (1824). The Supreme

Court has interpreted "manifest necessity" to mean a "high

degree" of necessity. Arizona, 434 U.S. at 505; see Brady v.

Samaha, 667 F.2d 224, 228 (1st Cir. 1981). "The 'manifest

necessity' standard provides sufficient protection to the

defendant's interests in having his case finally decided by the

jury first selected while at the same time maintaining 'the

public's interest in fair trials designed to end in just

judgments.'" Oregon v. Kennedy, 456 U.S. 667, 672 (1982)

(quoting Wade v. Hunter, 336 U.S. 684, 689 (1949)). The

prosecution bears a heavy burden in demonstrating that "manifest

necessity" exists when the defendant's "valued right to have his

trial completed by a particular tribunal" is implicated.

Arizona, 434 U.S. at 503 & n.11, 505. Moreover, the Court has

consistently emphasized that the standard cannot be applied

mechanically or "without attention to the particular problem

confronting the trial judge." Id. at 506; see also Illinois v.

Somerville, 410 U.S. 458, 462 (1973).

"Our duty as a reviewing court is to assure ourselves

that the trial judge engaged in a 'scrupulous exercise of

-5-

judicial discretion' in making the decision that a mistrial was

necessary."6 Samaha, 667 F.2d at 228 (quoting United States v.

Jorn, 400 U.S. 470, 485 (1971)). In the past, we have considered

significant whether the trial judge (1) considered alternatives

to a mistrial, (2) afforded counsel an opportunity to be heard on

the issue, and (3) decided precipitously or after sufficient

reflection. United States v. Ram rez, 884 F.2d 1524, 1528-29

(1st Cir. 1989); Samaha, 667 F.2d at 228-29; see also Arizona,

434 U.S. at 515-16.

In the present case, the district court judge

scrupulously exercised his discretion. After the conflict of

interest was first discovered, the trial judge held a conference

in chambers to discuss possible remedies. He suggested several

options: dismissal, declaration of mistrial, or continuance to

permit Simonetti to retain other counsel or to obtain a waiver

from Skinsacos. The judge then called a recess to let counsel

research the problem and review all options. Later, the hearing

resumed, only to be continued on several more occasions over the

next several days. The district judge specifically requested

alternative remedies from the parties and provided ample time to

obtain the waiver from Skinsacos. Simonetti ultimately engaged

6 Contrary to Simonetti's suggestion, this is not a case
involving prosecutorial misconduct designed to "harass or to
achieve tactical advantage over the accused," which would warrant
review under the "strictest scrutiny" standard. See Arizona, 434

U.S. at 508. The district court specifically found that neither
party could be faulted for failing to discover the conflict of
interest prior to trial. See United States v. Simonetti, No. 92-

22, slip op. at 1-2 & n.2 (D. Me. Jan. 27, 1993).

-6-

substitute counsel who did not have a conflict of interest. The

judge asked new counsel whether he could suggest other remedies,

whether Simonetti wished to continue the case with his new

attorney, or whether a waiver could be obtained from Skinsacos.

The court even considered continuing the case to allow new

counsel time to prepare the case from where Attorney Lilley left

off. This solution was rejected because a continuance would have

been unfairly prejudicial to codefendant. Likewise, to proceed

with the codefendant and later reconvene the jury to hear

Simonetti's case was not viable because the judge believed that

the jury could not return a fair verdict under such

circumstances.

In sum, the judge considered alternatives, implored the

original counsel and new counsel to proffer remedies, and devoted

ample time and energy to resolve the conflict of interest

problem, while remaining mindful of Simonetti's strong interest

in completing his trial before the first jury impaneled. The

court could not devise a remedy that would resolve the conflict

of interest and permit the case to continue before the original

jury. As a result, mistrial was a manifest necessity. The

district court therefore did not abuse its discretion by granting

the mistrial over defendant's objection.

Simonetti also argues that, even absent less drastic

alternatives to mistrial, retrial is barred where mistrial is

caused by governmental misconduct. Simonetti concedes that this

is not a case in which the prosecution intentionally goaded or

-7-

provoked the mistrial. See Oregon, 456 U.S. at 679. However,

retrial also may be barred where "egregious or unfair behavior"

by the prosecution "could be considered, objectively, as

equivalent to an intentional effort to provoke mistrial." United

States v. Larouche Campaign, 866 F.2d 512, 518 (1st Cir. 1989).

The inquiry into the prosecutor's intent calls for a finding of

fact. Id. The district court found that the failure to disclose

the references to Nick Skinsacos in the redacted reports was

inadvertent, although careless. See supra notes 1 & 6. The

record evidence supports this factual finding.

Simonetti finally urges that we adopt the novel rule of

Hylton v. Eighth Judicial Dist. Court, Dept. IV, 103 Nev. 418,

743 P.2d 622 (Nev. 1987), that bars retrial where governmental

misconduct which rises to the level of "inexcusable negligence"

causes a mistrial. In this case, the mistrial resulted from the

conflict of interest, not the unintentional failure to disclose

potentially exculpatory evidence, see supra note 1. Under these

circumstances, the government simply could not have known that

Attorney Lilley's law firm had represented Skinsacos, who was

only a peripheral player in Simonetti's case, some five years

earlier. We thus do not confront a case in which inexcusable

neglect by the prosecutor caused the mistrial, and consequently,

have no cause to consider the wisdom of Nevada's rule.

We affirm the decision of the district court as the

Double Jeopardy Clause poses no bar to a new trial.

-8-