KENNETH McKAGUE, APPELLANT, v. THE STATE OF NEVADA, RESPONDENT.

No. 12098

August 27, 1985                                    705 P.2d 127

*David G. Parraguirre,* Public Defender; *Michael B. McDonald,* Deputy Public Defender; *N. Patrick Flanagan,* Special Counsel, Reno, for Appellant.

---

[6]JUSTICE JOHN C. MOWBRAY recused himself, and took no part in the decision of this case.

*Brian McKay,* Attorney General, Carson City; *Mills Lane,* District Attorney; *Richard F. Cornell,* Deputy District Attorney; *Michael L. Mahaffey,* Deputy District Attorney; *Edward B. Horn,* Deputy District Attorney, Reno, for Respondent.

## OPINION

*Per Curiam:*

Appellant Kenneth McKague was found guilty of two counts of first-degree murder in the deaths of William and Irene Hembry and was sentenced to death. Appellant was also convicted of one count of burglary and one count of armed robbery, receiving consecutive sentences of ten years for the burglary count and fifteen years for the armed robbery count. Each term of imprisonment was enhanced pursuant to NRS 193.165 for use of a deadly weapon in the commission of a crime. Finding no error, we affirm appellant's conviction and sentences.

The record reflects that on the morning of December 22, 1978, members of the Reno Police Department were called to the Silver Dollar Motel by motel employees who had noticed that the office cash drawer was open. In the living quarters attached to the motel, police officers discovered the dead bodies of William and Irene Hembry, the motel's owners. The victims were lying face down, their hands bound behind their backs with electrical cord. A subsequent examination established that, while on their knees, they had been shot in the back of the head from a distance of two to six inches. Due to the power of the weapon used and its proximity to the victims, small bits of blood and tissue were scattered around the room.

Later that same day, Dale McCoy gave a statement to the police implicating appellant in the murders. Dale McCoy had been a schoolmate of appellant's cousin, John McKague, in California. In early December, Dale McCoy met John McKague in a Reno shopping center; finding that he had no place to stay, she invited him to stay with her in her apartment. She included in

the invitation appellant, along with his wife and her two small children. Also living in the studio apartment were Dale McCoy's brother, Randy McCoy, and Michael Tweedy, a friend of the McCoys.

According to Dale McCoy, on December 21, the day of the murders, appellant and John McKague left the apartment around noon. At around six o'clock, Dale and Randy McCoy saw the McKagues in a Reno casino. Soon afterward, the McKagues ran out in the street, stumbling as they went. When the McCoys returned to their apartment around seven o'clock, the McKagues were already there. Appellant was wiping prints off a 9 mm Luger automatic pistol; John McKague was in possession of a 9 mm Browning automatic pistol.[1] John McKague told Dale McCoy that "Kenny [appellant] blew away two people." He proceeded to tell the McCoys that he and appellant had gone to the Silver Dollar Motel to burglarize it. Suddenly Irene Hembry appeared, and John McKague put a gun to her stomach. William Hembry told his wife to cooperate; appellant then tied the victims with electrical cord and remained with them while John McKague went to look for money and jewelry. When John McKague returned, he discovered that appellant had shot both victims in the back of the head.[2] Appellant was present when John McKague told this story and did not deny or contradict it. In fact, appellant later told Dale McCoy that he had shot two people, commenting that maybe he had killed them because he was related to Kit Carson. Appellant cut off the left knee of his trousers in order to dispose of bloodstains; bloodstains were nevertheless later found on his clothing.

The two cousins left Reno the following day. They were eventually arrested in California and brought back to Reno. John McKague pleaded guilty to first-degree murder pursuant to an agreement under which the prosecution agreed not to seek the death penalty in return for John McKague's testimony before the grand jury and at trial. After his plea of guilty, John McKague gave two lengthy statements to police officers and testified before

[1]The McKagues had obtained the weapons from the burglary of a residence on December 21. Michael Tweedy had also participated in the burglary. The three men had divided up the proceeds, the Luger going to Tweedy, the Browning to John McKague and a .22 caliber Ruger revolver to appellant. Tweedy kept the Luger in a closet in the McCoy apartment while he searched for a buyer. On December 21 or 22, Tweedy discovered that the Luger had been replaced by the revolver. Appellant indicated to Randy McCoy that he intended to return the Luger to the unsuspecting Tweedy before leaving town, and in fact later exchanged the weapons.

[2]A subsequent ballistic examination of two 9 mm cartridge casings found near the victims' bodies established that they had been fired from the Luger stolen by the McKagues and Tweedy.

the grand jury. He was sentenced to life imprisonment with the possibility of parole.

Appellant pleaded not guilty and did not testify at his trial. The jury found him guilty on all counts. At the penalty hearing, defense counsel argued that the existence of mitigating factors rendered the death penalty inappropriate. Evidence presented by counsel included appellant's age, his history of drug abuse, and a psychologist's opinion that appellant was a "follower" rather than a "leader."[3] Counsel also argued that appellant had no significant history of prior criminal activity; there was evidence, however that appellant's prior record included eight arrests, a discharge from the army due to narcotics offenses, and a conviction for a property crime. The jury did not find any mitigating circumstances. Instead, it found four aggravating circumstances and imposed the death penalty. This appeal followed.

Appellant raises numerous claims of error, most of which are totally without merit. As to certain claims, no contemporaneous objections were tendered to the district court; such claims therefore need not be considered.[4] Hooper v. State, 95 Nev. 924, 925, 604 P.2d 115, 116 (1979); Henderson v. State, 95 Nev. 324, 326, 594 P.2d 712, 713 (1979); Matthews v. State, 94 Nev. 179, 181, 576 P.2d 1125, 1126 (1978). We note that appellant's direct involvement in the dual murders here at issue is conclusively established by the record. Likewise, the jury's determination that aggravating circumstances existed which were not outweighed by mitigating circumstances appears to be well founded.

We also conclude, after analyzing the circumstances of appellant's crime as required by NRS 177.055, that considering both the crime and the defendant, the sentence of death is not excessive or disproportionate to the penalty imposed in similar cases in this state. *See e.g.,* Deutscher v. State, 95 Nev. 669, 601 P.2d

---

[3]Appellant was twenty-five years old at the time of the murders. John McKague was seventeen years old. Appellant's counsel urged at trial that appellant had committed the crime while under John McKague's domination. However, although John McKague admitted that he had planned the burglary, there is no evidence in the record suggesting that John McKague ordered or incited appellant to shoot the victims.

[4]Appellant contends, *inter alia,* that the district court improperly instructed the jury regarding the possibility of executive clemency. Even assuming that such instruction was defective, appellant failed to raise an objection at trial. Turner v. State, 98 Nev. 103, 641 P.2d 1062 (1982). Moreover, we are persuaded on this record that neither the instruction in question, nor the other matters concerning which appellant now belatedly complains, impacted adversely on the essential fairness of the proceedings.

407 (1979); Bishop v. State, 95 Nev. 511, 597 P.2d 273 (1979). Finally, we conclude nothing in the record indicates that the death sentence was imposed under the influence of passion, prejudice or any other arbitrary factor. Accordingly, appellant's judgment of conviction and his sentence are affirmed.