**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Richard JARVIS, Defendant-Appellant.**

**No. 86–5003.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 8, 1986.

Decided April 21, 1986.

Designated for Publication June 25, 1986.

Gordon Greenberg, Los Angeles, Cal., for plaintiff-appellee.

Richard L. Knickerbocker, Marina Del Rey, Cal., for defendant-appellant.

Before WALLACE, HUG, and NORRIS, Circuit Judges.

HUG, Circuit Judge:

This is an appeal of the denial of a motion to dismiss the indictment on double jeopardy grounds after the declaration of a mistrial in a prior proceeding. The only issue on appeal is whether the record reflects the kind of "manifest necessity" in the declaration of the mistrial that is required to avoid the bar of double jeopardy. We have jurisdiction of the appeal of this pretrial order pursuant to *Abney v. United States*, 431 U.S. 651, 659–60, 97 S.Ct. 2034, 2040–41, 52 L.Ed.2d 651 (1977); *United States v. Ajimura*, 598 F.2d 510, 512 (9th Cir.1979).

On September 4, 1985, defendant Richard Jarvis ("Jarvis") and four others were indicted by a federal grand jury for several narcotics-related offenses. In the indictment, Jarvis is named as the central figure in a scheme to distribute large quantities of cocaine in Southern California.

On November 12, 1985, a jury was empaneled and heard opening statements from the prosecution and from the attorneys for each of the five defendants. Two government witnesses were called and testified. On the second day of trial, after the lunch break, counsel for Jarvis's co-defendants reported to the district court that all the jurors accidentally met Jarvis's four co-defendants at the elevator as they were being transported from the courtroom; the co-defendants were heavily shackled and chained together, and were under the guard of several United States Marshals. The jurors stared at the four defendants and evidenced a concerned reaction.

The attorneys for the four co-defendants argued that this confrontation would have a prejudicial effect on the jurors and would taint the remainder of the trial. All four of Jarvis's co-defendants moved for a mistrial. At the initial hearing on the matter, the Government argued against a mistrial. At this hearing, Jarvis's counsel made the following remark: "This does not affect my client, Mr. Jarvis, who is out on bond but, in a gesture of good faith, I would be happy to proceed alone if the court grants a mistrial."

After hearing arguments, the district court initially denied the mistrial motion, and the trial continued. Approximately two hours later, the district court recessed the proceedings and requested counsel to enter chambers. In chambers, the judge indicated that he was greatly concerned by the defendants' motion for mistrial and requested further research by the Government.

After hearing additional arguments on the matter, the district judge declared a mistrial. In reaching his decision, the district judge stated, "after due reflection I believe that the defendants' rights were compromised." The district court stressed that what the jurors saw would have a detrimental effect on the rights of all of the defendants to be presumed innocent of the charges. The district court further expressly found that Jarvis's right to a fair trial had been jeopardized because the jurors would infer his "guilt by association" with the other shackled defendants.

After the district judge reached this conclusion, Jarvis's counsel asked the judge if

he could comment further and Jarvis's counsel then made the following remarks:

Very briefly, your honor, with respect to Mr. Jarvis, the court is well aware, for the sake of the record, Mr. Jarvis did not ask for a mistrial and specifically went against a mistrial. Therefore, Mr. Jarvis will be through a second and subsequent trial not by his request.

Therefore I would ask the court that the remedy for this would be a dismissal as to Mr. Jarvis or to proceed with this jury.

After hearing these comments, the district judge reaffirmed his decision to grant a mistrial. Prior to the rescheduled trial, Jarvis filed a motion to dismiss the indictment on double jeopardy grounds. On January 7, 1986, the district court denied Jarvis's motion, ruling that "manifest necessity" warranted dismissing the jury. This appeal followed.

■ In a jury trial, "jeopardy attaches when the jury is empaneled and sworn." *Crist v. Bretz*, 437 U.S. 28, 29, 98 S.Ct. 2156, 2157, 57 L.Ed.2d 24 (1978). Even after jeopardy attaches, however, reprosecution is not barred if the trial was terminated because of "manifest necessity." *Arizona v. Washington*, 434 U.S. 497, 505, 98 S.Ct. 824, 830, 54 L.Ed.2d 717 (1978). The record must support the explicit or implicit finding of manifest necessity. *United States v. Sanders*, 591 F.2d 1293, 1299 (9th Cir.1979).

■ The degree of deference to be accorded the trial judge's determination of manifest necessity varies with the circumstances of each case. *Arizona v. Washington*, 434 U.S. at 507–10, 98 S.Ct. at 831–33; *United States v. Jaramillo*, 745 F.2d 1245, 1248 (9th Cir.1984), *cert. denied*, — U.S. ——, 105 S.Ct. 2142, 85 L.Ed.2d 499 (1985). The strictest scrutiny is applied to the district court's determination where the accused claims that the mistrial was intentionally caused by the prosecution. *Arizona v. Washington*, 434 U.S. at 507–08, 98 S.Ct. at 831–32. At the other end of the spectrum, great deference is accorded the trial judge's conclusion that a mistrial is required because of a deadlocked jury. *Id.* at 509, 98 S.Ct. at 832. Great deference is also warranted when the trial judge decides to declare a mistrial because of possible juror bias. *Id.* at 511, 98 S.Ct. at 833; *Sanders*, 591 F.2d at 1297.

■ In *Arizona v. Washington*, the Supreme Court held that the evenhanded administration of justice requires that the reviewing court accord the highest degree of respect to the trial judge's evaluation of the likelihood that the impartiality of one or more jurors may have been affected by the improper comment. *Arizona v. Washington*, 434 U.S. at 511, 98 S.Ct. at 833. However, even in according this great deference to the trial judge, this court has an obligation to satisfy itself that the trial judge exercised sound discretion in declaring a mistrial that is premised on jury bias. *Id.* at 514, 98 S.Ct. at 834–35. If it can be shown that the trial judge's decision was irrational or irresponsible, a retrial would be barred. *Id.* at 514–15, 98 S.Ct. at 834–35; *Jaramillo*, 745 F.2d at 1248.

Since the incident at the elevator was inadvertent, no prosecutorial misconduct was involved; therefore, the highest degree of deference is accorded the trial judge's determination that a mistrial is necessary to remedy potential jury bias. *Arizona v. Washington*, 434 U.S. at 511, 98 S.Ct. at 833.

■ In this case, the district court carefully considered the matter and, after due reflection, declared a mistrial. The district court concluded that Jarvis's rights also were compromised by the incident at the elevator since Jarvis was a co-defendant in the trial and the jury could well infer guilt by his association with the other shackled defendants.

There is no showing in the record that the counsel for Jarvis made any arguments to the district judge specifying why the incident at the elevator would not result in prejudice toward Jarvis even though the charge was that he was closely associated with the other defendants. On appeal, Jarvis contends that the inadvertent contact at the elevator was not prejudicial to him and was, in fact, beneficial to his case because

he was raising an entrapment defense and fully intended to admit his association with the other defendants. This argument, advanced for the first time on appeal, is not persuasive. It is obvious that a prior association with the four defendants would tend to undercut his entrapment argument that he lacked a predisposition to commit the crime. The district court had an obligation to consider these circumstances in order to preserve the institutional integrity of a fair trial.

The decision of the district court clearly was not irrational or irresponsible. The district court carefully weighed the alternatives. It was a reasonable conclusion of the district court that the possible jury bias resulting from the incident could adversely affect Jarvis's opportunity for a fair trial because he was named as a central figure in the narcotics transactions. The district court's determination that potential juror bias justified a mistrial under the manifest necessity standard was rational, was an exercise of sound discretion, and was adequately supported by the record. We therefore affirm the district court's order denying Jarvis's motion to dismiss the indictment on double jeopardy grounds.

AFFIRMED.