JAMIE GAITOR AND DONALD LEE ALLEN, APPELLANTS,
v. THE STATE OF NEVADA, RESPONDENTS.

No. 19986

November 28, 1990                    801 P.2d 1372

*Mark B. Bailus,* Las Vegas, for Appellant Jamie Gaitor.

*Leslie Mark Stovall,* Las Vegas, for Appellant Donald Lee Allen.

*Brian McKay,* Attorney General, Carson City; *Rex Bell,* District Attorney and *James N. Tufteland,* Chief Deputy District Attorney and *William P. Henry,* Deputy District Attorney, Clark County, for Respondent.

## OPINION

By the Court, MOWBRAY, J.:

Sometime around 8:30 p.m. on September 9, 1988, the victim, James Lockhart was approached by two men while walking in a parking lot near 7th and Carson Streets in Las Vegas, Nevada. One of the men called, "Hey, you!" and Lockhart turned and saw the faces of the men who were standing about an arm's length away.

Lockhart was grabbed by one of the men and an altercation ensued. He felt a hand go into his back pocket where he kept his wallet, and the wallet either fell out of his pocket, or was taken by the assailants. Lockhart was then thrown to the earth, and his glasses fell off making it difficult for him to see. As the assailants fled from the scene, Lockhart located his glasses and retrieved his wallet. Putting his glasses back on, Lockhart looked down the alley to see the two men as they ran.

Lockhart gave chase after he discovered $50.00 was missing from his wallet, and was fortunate enough to run by a police car, which he flagged down. Lockhart gave a description of the assailants to the police officer, and a perimeter was established around the crime scene. Within fifteen minutes, a police dog located appellant, Jamie Gaitor inside the perimeter hiding under a Cadillac automobile.

Gaitor was immediately taken to Lockhart who positively identified Gaitor as one of the two men who had attacked him. According to the police report, after Gaitor was Mirandized, he identified co-appellant, Donald Allen as the other male involved in the assault. Approximately five days later, Allen was located at the Clark County Detention Center where he was incarcerated for an unrelated offense.

Allen was taken from his cell and placed in a line-up. The public defender's office was notified of the line-up, but did not send an attorney to view the line-up proceedings. After photographs were taken of the individuals in the line-up, Lockhart selected Allen as the other man who had attacked him in the parking lot on September 9, 1988.

The appellants' first trial was declared a mistrial by the district court judge because a juror saw one of the State's witnesses in handcuffs outside the courtroom and mentioned this to the jury foreman, as well as some fellow jurors. At a retrial, Lockhart positively identified Gaitor and Allen as the assailants without objection from defense counsel. Another witness also positively identified Gaitor and Allen as the assailants. After hearing the

evidence, the jury returned verdicts of guilty against both Gaitor and Allen on one count each of robbery and conspiracy to commit robbery. Thereafter, both defendants were sentenced as habitual criminals.

In his appeal, Gaitor contends his retrial offended the United States and Nevada constitutional prohibitions against double jeopardy where the original trial was aborted without an explicit request from Gaitor to do so. We reject this argument.

"No person shall be subject to be twice put in jeopardy for the same offense. . . ." Nev. Const. art. I, § 8. *See also,* U.S. Const. amend. V. However, in general, a mistrial declared at the request of defense counsel or with defense counsel's consent, does not bar a retrial under this double jeopardy rule. Melchor-Gloria v. State, 99 Nev. 174, 178, 660 P.2d 109, 111 (1983). Gaitor's counsel did not explicitly request the mistrial, but was silent when the trial judge informed counsel that he did not believe the court had any other alternative but to declare a mistrial. The failure of defense counsel to object or express an opinion to the district court regarding the propriety of the mistrial implied consent and indicated tacit approval.

Furthermore, the double jeopardy rule does not apply in cases of "manifest necessity" where trial courts, in the exercise of sound discretion under established legal principles, have the power to declare a mistrial and discharge a jury without the consent of the defendant. Williamson v. Sheriff, 89 Nev. 507, 508, 515 P.2d 1028, 1029 (1973). In this case, manifest necessity made it incumbent upon the district judge to declare a mistrial when a juror saw one of the State's witnesses in handcuffs outside the courtroom and discussed this event with the jury foreman and fellow jurors.

Next, both appellants argue on appeal that the victim's eyewitness identification at the trial should have been excluded by the trial judge because the pre-trial, police supervised identifications violated the appellants' sixth amendment right to counsel and tainted the in-court identifications. We disagree.

A photographic display of Allen's line-up at the detention center was created and was made available at trial. Allen's counsel was allowed to examine the photographs but did not register an objection or make an offer of proof to indicate to the district court how the pre-trial, police supervised line-up at the detention center was suggestive. Likewise, there is nothing in this

appeal to indicate how the line-up identification of Allen was suggestive. This court is not obligated to hear issues on appeal where a contemporaneous objection was not made to the district court. McKague v. State, 101 Nev. 327, 330, 705 P.2d 127, 129 (1985). Furthermore, since Allen's counsel had an opportunity to cross-examine the officer who created the photographic display of the line-up, as well as any witness involved with the identification, the exclusion of Lockhart's eyewitness identification at the trial was not required by the sixth amendment. French v. State, 95 Nev. 586, 590, 600 P.2d 218, 221 (1979).

With respect to Gaitor's appeal, the pre-trial, police supervised confrontation between Gaitor and the victim at the scene of the crime was inherently suggestive because it implied the officers believed Gaitor was one of the assailants. Jones v. State, 95 Nev. 613, 617, 600 P.2d 247, 250 (1979). However, such a confrontation can be justified by countervailing policy considerations, where a victim's memory will be fresher minutes after the crime, and prompt identifications may expeditiously exonerate innocent persons. *Id.* at 617, 600 P.2d at 250. Further, the facts of this case indicate the police supervised confrontation at the scene of the crime was not "so unnecessarily suggestive and conducive to irreparable mistaken identification that [Gaitor] was denied due process of law." Stovall v. Denno, 388 U.S. 293, 301-302 (1967). Lockhart saw his assailants' faces at a short distance just prior to, and during the assault, and Lockhart's attention was drawn to both of the assailants when one called out "Hey you!". Furthermore, Lockhart was able to make a positive identification of Gaitor to the police within minutes of the assault. These facts indicate Lockhart's trial identification of Gaitor was reliable. Manson v. Braithwaite, 432 U.S. 98, 114 (1977). Also, while a defendant is entitled to an attorney when the prosecutorial process shifts from an investigatory to an accusatory stage and focuses upon the defendant, Thompson v. State, 85 Nev. 134, 451 P.2d 704 (1969), *cert. denied* 396 U.S. 893 (1969), Gaitor was not entitled to an attorney at the on-scene identification because the facts indicate the police were trying to eliminate suspects found within the perimeter of the crime scene when Gaitor was identified. At that point, the process had not shifted from an investigatory to an accusatory stage.

The appellants' argument that there was insufficient evidence produced at the trial to support their convictions also lacks merit. Two eyewitnesses identified the appellants as the perpetrators of

the crime. The weight and credibility of the eyewitness testimony is solely within the province of the jury. Wise v. State, 92 Nev. 181, 183, 547 P.2d 314, 315 (1976). This court "will not usurp that function, especially where, as here, the record supports a finding that the pretrial identification of [the appellants] had sufficient indicia of reliability to remove any taint of suggestiveness." *Jones,* 95 Nev. at 617, 600 P.2d at 250.

Likewise the appellants' conspiracy conviction is also supported by the record. The jury could have found the existence of an agreement essential to the conspiracy verdict upon the facts of this case, and where, as here, there is substantial evidence to support the jury's verdict, it should not be overturned on appeal. Isbell v. State, 97 Nev. 222, 226, 626 P.2d 1274, 1276 (1981).[1]

Finally, Allen argues that the state failed to meet its burden of proof under NRS 207.010[2] to establish Allen's status as an habitual criminal. Allen asserted at sentencing that one of the three convictions used for the habitual criminal enhancement, a conviction for possession of a controlled substance out of Nebraska, was not a felony conviction. The district court rejected this argument and concluded that there was no doubt under the

---

[1]We recognize and appreciate the concerns expressed in the dissenting opinion. Nonetheless, "[c]onspiracy is seldom susceptible of direct proof and is usually established by inference from the conduct of the parties." State v. Dressel, 513 P.2d 187, 188 (N.M. 1973), citing Oliver v. United States, 121 F.2d 245 (10th Cir. 1941), cert. denied, 314 U.S. 666 (1941). The facts of this case do demonstrate a coordinated series of acts, sufficient to infer the existence of an agreement essential to the conspiracy convictions of the appellants: Gaitor and Allen approached the victim together, at the same time of night, in the same location, with the same apparent motive; they simultaneously robbed Mr. Lockhart, each taking a role in the attack, and then they fled. It may be possible that through some symbiotic relationship the two appellants happened to be on the same street, at the same time, with the same intent to rob someone and, without more, elected to approach the victim together and coordinate their assault. However, the realm of possibilities is not controlling here. Rather, the issue asks whether there is substantial evidence to support the jury's conclusion that the appellants conspired to commit the crime. We conclude there was.

[2]NRS 207.010(2) provides in pertinent part:

Every person convicted in this state of any crime of which fraud or intent to defraud is an element, or of petit larceny, or of any felony, who has previously been three times convicted, whether in this state or elsewhere, of any crime which under the laws of the situs of the crime or of this state would amount to a felony, . . . shall be punished by imprisonment in the state prison for life with or without possibility of parole.

Nebraska statutes that Allen's conviction for possession of a controlled substance represented a felony offense. We agree.

Allen was convicted in Nebraska of possession of the controlled substance meprobamate. Meprobamate was a Schedule IV controlled substance at the time of Allen's offense,[3] and was punishable by a term in the Nebraska Penal and Correctional Complex.[4] In Nebraska, if an offense "is not designated by the statute creating it as either a felony or a misdemeanor, the grade of the offense is determined by the maximum punishment authorized by statute." State v. Redwine, 223 N.W.2d 488 (Neb. 1974). Since Allen was sentenced to the Nebraska Penal and Correctional Complex for his conviction for possession of a controlled substance, the conviction represented a felony. *Id.* The district court did not err when it found Allen to be an habitual criminal.

Therefore, the appellants' judgments of convictions and Allen's sentence as an habitual criminal are affirmed.

YOUNG, C. J., STEFFEN and SPRINGER, JJ., concur.

ROSE, J., concurring and dissenting:

I wholeheartedly concur in the affirmance of the convictions of Gaitor and Allen for robbery. However, I find the evidence insufficient to support their convictions for conspiracy to commit robbery and dissent from the affirmance on that issue.

Gaitor and Allen shoved the victim to the pavement in a parking lot, took his wallet from him and ran. From these facts establishing the robbery, the State argues that we can infer a conspiracy to commit the robbery which preceded the actual attack. I do not believe this can or should be done.

A conspiracy to commit robbery requires that two or more people conspire to commit it. NRS 199.480. Mere association with a co-defendant is insufficient to support the charge of conspiracy. Peterson v. Sheriff, 95 Nev. 522, 598 P.2d 623 (1979). There is no direct evidence to establish that the defendants met or even agreed to commit a crime before the assault on the victim. The facts of the primary offense, the robbery, give no indication that there was a predetermined plan or agreement. Had the facts of the robbery shown a more thought-out or planned crime, then the inference of a prior agreement to commit the crime would be reasonable. *See* People v. Larsen, 572 P.2d 815 (Colo. 1978) (conviction of getaway car driver for conspiracy to commit robbery was affirmed because actual robbers ran directly to the

---

[3]*See* Neb. Rev. Stat. § 28-4,117 (1975).

[4]*See* Neb. Rev. Stat. § 28-4,125(2) (1975).

driver's car after the robbery, the driver responded to the robbers' direction and drove away, and the car was equipped with stolen license plates). However, facts showing a coordinated series of acts from which a prior agreement can be reasonably inferred are lacking in this case.

When a co-conspirator's out-of-court statement is offered to prove that the defendant agreed to commit an unlawful act with another, the hearsay rule requires corroboration of that conspiracy with independent evidence. See Peterson, supra. Consequently, to prove the crime of conspiracy, should not we require some independent evidence other than the fact that two people committed the crime? At the very least, the facts establishing the primary offense should show a reasonably clear inference that an agreement preceded the perpetration of the crime.

Judge Learned Hand called conspiracy "the darling of the modern prosecutor's nursery." Harrison v. United States, 7 F. 259, 263 (2nd Cir. 1925). In argument before this court, the deputy district attorney stated that approximately 80 percent of the criminal complaints against multiple defendants filed in Clark County charge a conspiracy as well as the primary offense. Time has not changed the attractiveness of this crime to prosecuting attorneys.

From our decision today, a prior conspiracy can be inferred whenever a crime is committed by two people. I do not believe this is good law or sound policy. For that reason, I dissent from the affirmance of the conspiracy convictions, but concur in all other aspects of the majority opinion.