RICHARD LEE BENSON, Jr., APPELLANT, v. THE
STATE OF NEVADA, RESPONDENT.

No. 25992

May 25, 1995                                895 P.2d 1323

*Gensler and Kuehn,* Tonopah, for Appellant.

*Frankie Sue Del Papa,* Attorney General, Carson City; *Robert
S. Beckett,* District Attorney, and *Rachel H. Nicholson* and *Kirk
Vitto,* Deputy District Attorneys, Nye County, for Respondent.

## OPINION

By the Court, ROSE, J.:

Appellant Richard Lee Benson, Jr. was charged with three counts of sexual assault. During Benson's first trial, the prosecutor moved for a mistrial, and the district court held Benson's counsel in criminal contempt and declared a mistrial. This court granted Benson's counsel's petition for a writ of mandamus, concluding that the trial court had abused its discretion in finding him in contempt. The district court denied Benson's motion to dismiss the charges on grounds of double jeopardy, and a second trial was held. The jury found him guilty on all three counts.

We conclude that the retrial violated the Fifth Amendment protection against double jeopardy and reverse.

### FACTS

In April 1993, the first trial in this case ended in a mistrial after the district court held Benson's counsel, John Keaveney, in criminal contempt of court. The contempt ruling and declaration of

mistrial arose out of a highly charged confrontation in which the prosecutor accused Keaveney of unethical conduct and deliberate violation of a court order. The prosecutor moved for a mistrial, asserting that Keaveney had intentionally violated the district court's order excluding evidence of prior consensual sex on the part of the alleged victim. The prosecutor addressed the court as follows:

> I can't imagine—to be quite honest with you, I'm totally shocked, I really am. I'm absolutely shocked at this type of unethical, improper behavior on the part of defense counsel.
> . . . .
> To be quite honest with you, I'm pretty shocked. I'm not really sure I'm totally in control of myself at the present time.
> I'm asking the court for a mistrial.

When the district court asked for a response to the motion, Keaveney said: "If he wants a mistrial, I won't oppose a mistrial but I don't think I violated any order, I think the defendant certainly is entitled to a defense." Keaveney then argued in support of his line of questioning.

The prosecutor then stated: "I think Mr. Benson and Mr. Keaveney have cooked up this scheme on the theory if they can get a mistrial out of this that double jeopardy is going to bar a new trial in this case. I think this is deliberate and intentional and preplanned." Keaveney responded, "Your Honor—Your Honor, I also wouldn't oppose continuing the trial."

The prosecutor immediately replied, "Continuing the trial doesn't do us any good, this jury has been totally tainted on that issue." Keaveney attempted again to justify his presentation of Benson's case. The district court held Keaveney in criminal contempt and declared a mistrial.

In November 1993, this court granted Keaveney's petition for a writ of mandamus. We determined that Benson's counsel had not violated the district court's order. Moreover, we rejected the lower court's "overly restrictive interpretation" of the order, which excluded evidence of consensual sex between the alleged victim and Benson. We stated: "The rape shield statutes cannot be interpreted in such a manner as to preclude the defendant from putting forward a meaningful defense."

Before the retrial, Benson moved to dismiss on double jeopardy grounds. The court denied Benson's motion based on his "acquiescence" to the mistrial. The court made no findings to support its ruling, including no findings in regard to the actions or intent of the prosecutor. The second trial occurred from February 22 to 24, 1994.

The alleged victim testified that she had begun a consensual sexual relationship with Benson but that it had turned physically and emotionally abusive. She recounted three incidents where Benson used force to have sex with her against her will. Benson denied threatening or abusing her or ever having sex with her without her consent. The State presented rebuttal testimony which corroborated her claims that Benson had been abusive toward her.

The jury found Benson guilty of all three counts. The district court entered a judgment of conviction and sentenced him to life in prison on each count and to an additional twenty years in prison as a habitual criminal, with all sentences to be served consecutively.[1]

## DISCUSSION

The Fifth Amendment precludes putting a defendant twice in jeopardy for the same offense. Although Benson's first trial put him in jeopardy and was aborted unnecessarily, the State contends that Benson consented to the mistrial.

The preliminary question is whether the mistrial was necessary. To avoid the bar of double jeopardy, there must be manifest necessity for a mistrial declared despite objection by the defendant. Carter v. State, 102 Nev. 164, 169, 717 P.2d 1111, 1114 (1986). The State does not argue on appeal that there was any manifest necessity for a mistrial in the first trial, and in fact the mistrial was completely improper. This court determined that Benson's counsel had not violated the district court's order and rejected that court's "overly restrictive interpretation" of the order.

The crucial issue, therefore, is whether Benson consented to the mistrial. "As a general rule, a defendant's motion for, or consent to, a mistrial removes any double jeopardy bar to reprosecution." Melchor-Gloria v. State, 99 Nev. 174, 178, 660 P.2d 109, 111 (1983). An exception to this rule "applies in those cases in which the prosecutor intended to provoke a mistrial or otherwise engaged in 'overreaching' or 'harassment.'" Id., 660 P.2d at 112. However, such overreaching or harassment, "even if

---

[1]The additional sentence for being a habitual criminal was error. Cohen v. State, 97 Nev. 166, 169, 625 P.2d 1170, 1172 (1981); Lisby v. State, 82 Nev. 183, 189, 414 P.2d 592, 595-96 (1966). Since the convictions must be reversed, correction of the sentence is unnecessary.

sufficient to justify a mistrial on defendant's motion, does not bar retrial absent intent on the part of the prosecutor to subvert the protections afforded by the Double Jeopardy Clause." *Id.* (citing Oregon v. Kennedy, 456 U.S. 667 (1982)).

*Melchor-Gloria* and *Oregon* involved cases where prosecutorial misconduct led a defendant to seek a mistrial. *Melchor-Gloria,* 99 Nev. at 178, 660 P.2d at 111; *Oregon,* 456 U.S. at 669. In *Oregon,* the Court held that a defendant may invoke the bar of double jeopardy only in "those cases in which the conduct giving rise to the successful motion for a mistrial was intended to provoke the defendant into moving for a mistrial." *Id.* at 679. "Only where the governmental conduct in question is intended to 'goad' the defendant into moving for a mistrial may a defendant raise the bar of double jeopardy to a second trial after having succeeded in aborting the first on his own motion." *Id.* at 676.

In this case, the prosecutor, not Benson, moved for the mistrial, distinguishing this case from *Melchor-Gloria* and *Oregon* and other cases cited by the State. If the instant case is nevertheless analyzed under this case law, the prosecutor's unfounded motion for a mistrial appears functionally equivalent to, if not more egregious than, "goading" or "provoking" the defendant into calling for a mistrial. However, consent is not relevant to these cases. The issue of consent by a defendant arises most often when the trial court sua sponte declares a mistrial or, more rarely, in cases like this one where the prosecution moves for one. *Cf.* W.R. Habeeb, Annotation, *What Constitutes Accused's Consent to Court's Discharge of Jury or to Grant State's Motion for Mistrial Which Will Constitute Waiver of Former Jeopardy Plea,* 63 A.L.R.2d 782 (1959 & Supp. 1994); John E. Theumann, Annotation, *Former Jeopardy as Bar to Retrial of Criminal Defendant after Original Trial Court's Sua Sponte Declaration of a Mistrial—State Cases,* 40 A.L.R.4th 741, § 8 (1985).

Although the State moved for the mistrial, Benson's counsel, Keaveney, at one point said he would not oppose a mistrial. The State contends that this statement conclusively establishes consent and the court need trouble itself no further. However, this statement did not stand alone, but came in the context of a heated personal attack by the prosecutor upon Keaveney.

In determining implied consent, the totality of the circumstances of each case must be considered, and consent to double jeopardy should not be lightly presumed.

> While something more than mere silence on the defendant's part must be shown to establish his consent to being placed in double jeopardy, the consent need not be express;

rather, it may be implied from a totality of the circumstances. *See, e.g., United States v. Rich,* 589 F.2d 1025 (10th Cir. 1978); *United States v. Goldman,* 439 F.Supp. 358 (S.D.N.Y. 1977) aff'd mem., 573 F.2d 1297 (1st Cir. 1977); *Harris v. Justices of the Supreme Court,* 44 N.Y.2d 874, 407 N.Y.S.2d 478, 378 N.E.2d 1048 (1978). Stressing the view that consent to be placed in double jeopardy will not be lightly presumed, the court in *Curry v. Superior Court,* 2 Cal. 3d 707, 87 Cal. Rptr. 361, 470 P.2d 345 (1970), stated: ''It is true that affirmative conduct by the defendant may constitute a waiver if it clearly evidences consent . . . .'' *Id.* 87 Cal. Rptr. at 364, 470 P.2d at 348. Idaho has consistently recognized the presumption against waiver of fundamental constitutional rights.

State v. Werneth, 611 P.2d 1026, 1027-28 (Idaho 1980), *cert. denied,* 449 U.S. 1129 (1981).

In Gaitor v. State, 106 Nev. 785, 788, 801 P.2d 1372, 1374 (1990), this court concluded that the ''failure of defense counsel to object or express an opinion to the district court regarding the propriety of the mistrial implied consent'' when the trial judge stated that he believed it necessary to declare a mistrial. In that case, there was a manifest necessity for the mistrial because a juror saw a State's witness in handcuffs outside the courtroom and discussed it with fellow jurors. *Id.*

In the instant case, like *Gaitor,* Benson's counsel failed to object. However, unlike *Gaitor,* he did not fail to express an opinion on the propriety of the mistrial. Keaveney disputed the prosecutor's basis for seeking a mistrial and argued that he had done nothing improper. Also, unlike *Gaitor,* there was no manifest necessity for the mistrial.

Failure to object to a mistrial does not necessarily constitute implied consent in Nevada, as illustrated by Hylton v. District Court, 103 Nev. 418, 743 P.2d 622 (1987). In *Hylton,* the defense counsel called the trial court's attention to difficulties involved in cross-examining a witness called by the State. As here, the prosecutor moved for a mistrial, stating that without the witness's testimony, the State's case would be prejudiced. The court granted the motion, apparently without objection by the defense. Defense counsel then moved to dismiss the charges on the ground that a subsequent trial was barred as double jeopardy. The court denied the motion. *Id.* at 421, 743 P.2d at 624.

The defendant petitioned for a writ of prohibition against further prosecution. This court concluded that there was no manifest necessity for the mistrial. *Id.* at 424, 743 P.2d at 626. It

also concluded that inexcusable negligence by the prosecutor had caused the mistrial because the prosecutor was informed long before the trial of potential difficulties with the witness. *Id.* at 426, 743 P.2d at 627. The court concluded further prosecution would violate the petitioner's right to be free of double jeopardy and granted the writ.

In summary, the totality of circumstances in the case before us consists of the following. The prosecutor, not the defendant, moved for a mistrial. Benson's counsel initially stated he would not oppose a mistrial. He said this without consulting Benson and while under attack from the prosecutor and the threat of being held in contempt. When his motives were questioned, Benson's counsel stated that he would not oppose continuing the trial either. In response to this concession, the prosecutor insisted that a mistrial was the only solution. Before granting the mistrial, the district judge did not explore any other options. Benson's counsel disagreed with the basis for the mistrial urged by the prosecutor and was correct while the prosecutor and judge were in error.

The constitutional protection against double jeopardy includes "the right of the defendant to have his trial completed before the first jury empaneled to try him." Oregon v. Kennedy, 456 U.S. 667, 673 (1982). An accused has a right to retain primary control over the response to prosecutorial or judicial error. "[T]he defendant has a significant interest in the decision whether or not to take the case from the jury when circumstances occur which might be thought to warrant a declaration of mistrial." United States v. Jorn, 400 U.S. 470, 485 (1971). Absent a defense motion for a mistrial, it is incumbent upon "trial judges not to foreclose the defendant's option until a scrupulous exercise of judicial discretion leads to the conclusion that the ends of public justice would not be served by a continuation of the proceedings." *Id.*

The one statement in this case by defense counsel that he would not oppose a mistrial is counterbalanced by his statement that he would not oppose a continuation of the trial and by his argument against the grounds for mistrial asserted by the prosecutor. Moreover, the defense counsel had just been roundly upbraided by the prosecutor and adjudged to be in criminal contempt of court when the mistrial was granted; it is not surprising that he did not at this point venture to object to the declaration of the mistrial. Finally, the prosecutor insisted on the mistrial and unjustifiably attempted to prevent Benson from putting forth a legitimate defense, and the trial court failed in its duty to scrupulously exercise its discretion before concluding that the trial could not continue.

Considering the total circumstances and the constitutional con-

cerns at stake, this court cannot presume that Benson consented to forego his protection against double jeopardy. His retrial was therefore constitutional error.

## CONCLUSION

Benson's retrial violated the constitutional protection against double jeopardy. We therefore reverse his convictions.

YOUNG and SPRINGER, JJ., concur.

SHEARING, J., dissenting, with whom STEFFEN, C. J., concurs:

I would affirm the conviction. Double jeopardy is not implicated when the defendant consents to a mistrial. Melchor-Gloria v. State, 99 Nev. 174, 178, 660 P.2d 109, 111 (1983) (citing Oregon v. Kennedy, 456 U.S. 667 (1982)). In this case, the defendant clearly consented to a mistrial when his counsel stated, "If he wants a mistrial, I won't oppose a mistrial but I don't think I violated any order, I think the defendant is entitled to a defense." Agreeing to discharge the jury panel and begin the case anew at a later date and in a calmer atmosphere appears to have been a good defense strategy in light of the circumstances in which defense counsel was attempting to present a defense.

The majority's discussion of manifest necessity and implied consent is inapposite. The district court judge and the prosecution have a right to rely on the express consent of the defendant's counsel.