**134 Nev., Advance Opinion 57**

## IN THE SUPREME COURT OF THE STATE OF NEVADA

GAMBINO GRANADA-RUIZ,
Petitioner,
vs.
THE EIGHTH JUDICIAL DISTRICT
COURT OF THE STATE OF NEVADA,
IN AND FOR THE COUNTY OF
CLARK; AND THE HONORABLE
KATHLEEN E. DELANEY, DISTRICT
JUDGE,
Respondents,
   and
THE STATE OF NEVADA,
Real Party in Interest.

No. 72446

**FILED**

AUG 02 2018

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY
CHIEF DEPUTY CLERK

Original petition for a writ of mandamus, or in the alternative, prohibition in a criminal matter.

*Petition denied.*

David M. Schieck, Special Public Defender, and Robert Arroyo, Alzora B. Jackson, and JoNell Thomas, Deputy Special Public Defenders, Clark County,
for Petitioner.

Adam Paul Laxalt, Attorney General, Carson City; Steven B. Wolfson, District Attorney, Steven S. Owens, Chief Deputy District Attorney, and Nicole J. Cannizzaro and Kenneth N. Portz, Deputy District Attorneys, Clark County,
for Real Party in Interest.

BEFORE THE COURT EN BANC.

18-29634

*OPINION*

By the Court, CHERRY, J.:

Petitioner Gambino Granada-Ruiz stood trial on charges of murder and battery with substantial bodily harm. During a weekend recess in jury deliberations, one juror conducted extrinsic legal research and shared that information with other jurors when deliberations resumed. After considering argument from counsel and canvassing two jurors, the district court declared a mistrial. Granada-Ruiz moved to dismiss the charges based on a constitutional double jeopardy theory. The district court denied the motion and set the matter for a new trial. Granada-Ruiz petitions this court for a writ of mandamus[1] directing the district court to grant his motion to dismiss and bar his re-prosecution following the mistrial. We conclude that double jeopardy does not prohibit Granada-Ruiz's retrial under the totality of the circumstances because he impliedly consented to the district court's declaration of a mistrial, and the district court did not abuse its discretion in finding manifest necessity to declare a mistrial. Therefore, we deny Granada-Ruiz's petition on the merits.

## FACTS AND PROCEDURAL HISTORY

The State charged Granada-Ruiz with murder and battery resulting in substantial bodily harm. Whether Granada-Ruiz and the victim had a physical altercation was not at issue, and the trial hinged on whether Granada-Ruiz acted in self-defense. The trial proceeded to jury

---

[1]Granada-Ruiz alternatively seeks a writ of prohibition; however, a writ of prohibition serves to arrest the proceedings of a court outside of its jurisdiction. NRS 34.320. Because he seeks a writ compelling the district court to grant his motion to dismiss on grounds that the double jeopardy principles mandate such an outcome, we consider his petition under the mandamus standard.

 

deliberations without incident. On the second day of deliberations, however, the district court received two notes from jurors. The first note was from Juror No. 12 and claimed that Juror No. 3 had performed external legal research on the internet the previous weekend. The second note was from Juror No. 3 and stated that he had researched legal definitions and was unwilling to disregard what he had found.

The district court summoned both parties and, before Granada-Ruiz arrived, informed counsel for both sides of the developments and that the district court would need to determine if further deliberations were possible. The district court stated that it would canvass the jurors to determine whether the information had been shared, the nature and scope of the taint, and whether the deliberative process had been so compromised to necessitate a mistrial.

The State suggested that the district court conduct a two-part inquiry to determine whether the information had been shared and whether the remaining jurors would be able to disregard it. It further posited that, because Juror No. 3 had separated himself from the other jurors, his research may not have affected their deliberations. Granada-Ruiz's counsel disagreed, stating that external research entering the deliberation room was inherently a problem, creating the possibility that it "infect[ed] the jury." The district court again indicated that if canvassing revealed the external research had been shared amongst the jurors, deliberations may be irreparably tainted and whether the trial continued would ultimately be up to the court.

Upon Granada-Ruiz's arrival, the district court apprised him of what had occurred and allowed the parties to present the caselaw they had

found in the meantime.[2] To determine the nature and extent of the taint, the district court called the foreperson for canvassing. The foreperson stated that although multiple jurors had informed Juror No. 3 that he should not attempt to discuss his external research, the deliberations throughout the day included discussions about Juror No. 3's external research concerning the definitions of premeditation and self-defense. The foreperson further stated that Juror No. 3 perceived a difference in what was stated during closing argument about premeditation and what his research revealed, and the deliberations never meaningfully returned to the jury instructions on either issue because "the conversation really got bent more on what Juror No. 3 was saying about premeditation."

After dismissing the foreperson, the district court told both parties that it would question Juror No. 3 but that it appeared external research concerning the central issues presented to the jury had permeated deliberations and led to the exclusion of the jury instructions on two points of law. The district court stated that it struggled to see how deliberations could be untainted, even if the remaining jurors offered assurances that they could disregard the improper research. The district court requested both parties' thoughts on proceeding. The State maintained that the district court could disregard the external research so long as the remaining jurors rejected it and canvassing revealed that the external research did not affect deliberations. Granada-Ruiz's counsel stated that she wanted to hear from Juror No. 3 but that she tended to agree with the court's initial

---

[2]We note here that the best practice is to wait for the defendant's arrival before discussing crucial issues at trial, however, the district court acted responsibly here by repeating the information upon Granada-Ruiz's arrival.

impression that the external research both permeated the deliberations and concerned the central issue of trial.

The district court then canvassed Juror No. 3. Juror No. 3 stated that he had been confused by something the State had said in closing arguments and decided to research premeditation and self-defense on his own for clarity as to sufficient time lapse for forming a premeditated intent and continuing danger for purposes of self-defense. Juror No. 3 stated that he perceived the other jurors comments about outside research being impermissible to mean that he was not allowed to consider the law and that the law was "stricken from the record." He further stated, "I don't know what I am doing. I don't know what is going on to be honest with you." After Juror No. 3 returned to the deliberation room, the district court stated that Juror No. 3's incoherent statements and fundamental misunderstanding of his duty demonstrate his inability to serve on the jury, and the district court reiterated its concern over the nature and length of discussion involving external research. Counsel for Granada-Ruiz then expressed Granada-Ruiz's frustration after two weeks of trial and said, "[s]o it's my understanding that the Court is going to declare a mistrial. I don't know if we are going to try to go down that road of trying to discuss it." Defense counsel and co-counsel asked the court to "find out [the results of] the 11 to 1" preliminary jury vote, and stated, "I think based on that, we have our opinion. We would just like to know." Not hearing any objections, the district court ordered a mistrial, finding a manifest necessity as there could be no assurances that any further product of deliberations would be fair and impartial and unaffected by the external research. The district court informed the foreperson that it was declaring a mistrial and asked the foreperson about his earlier note indicating that the jury had voted and

deliberations were not moving toward unanimous decision. The foreperson stated that the vote stood at 11 to 1 not guilty. The court then dismissed the jury.

Granada-Ruiz moved to dismiss the charges, arguing that there was no manifest necessity for a mistrial, such that re-prosecution was barred by constitutional double jeopardy principles. The State opposed the motion, arguing that the court acted within its discretion in declaring a mistrial, and Granada-Ruiz did not object to it. After oral arguments, the district court denied the motion and issued the following findings of facts and conclusions of law: (1) neither party requested a mistrial, (2) the court considered alternatives to declaring a mistrial, (3) it had canvassed the jury in order to determine whether a mistrial was necessary, (4) the jurors had discussed the substance of Juror No. 3's research for a lengthy period, (5) the jury never returned to the statements of law in the jury instructions, (6) the court found manifest necessity to order a mistrial because the research pertained to material facts and issues and the jury's deliberation on this research made it impossible to determine what constituted proper deliberation, and (7) that a sua sponte mistrial was necessary in light of the permeation of the extrinsic research. Granada-Ruiz now petitions this court for extraordinary writ relief.

## DISCUSSION

Entertaining a petition for a writ of mandamus is within this court's discretion. *Smith v. Eighth Judicial Dist. Court*, 107 Nev. 674, 677, 818 P.2d 849, 851 (1991). A writ of mandamus serves to compel an act required by law or to control the arbitrary exercise of discretion. *State v. Eighth Judicial Dist. Court (Armstrong)*, 127 Nev. 927, 931-32, 267 P.3d 777, 779-80 (2011). We will not entertain such a petition if there is an adequate remedy in the ordinary course of law. NRS 34.170. However, a

petitioner's ability to raise a double jeopardy argument on appeal from a final judgment following a retrial is not an adequate remedy, as it still subjects the accused to being placed in jeopardy twice. *Gonzalez v. Eighth Judicial Dist. Court*, 129 Nev. 215, 217-18, 298 P.3d 448, 449-50 (2013). As such, we exercise our discretion to consider the merits of Granada-Ruiz's petition.

*The Double Jeopardy Clause does not bar the re-prosecution of Granada-Ruiz*

The guarantee against double jeopardy provided by the Fifth Amendment of the United States Constitution, which is applicable to the states through the Fourteenth Amendment's Due Process Clause, prevents a defendant from being tried more than once for the same offense. *Oregon v. Kennedy*, 456 U.S. 667, 671 (1982). Where a mistrial that has not been requested by the defendant prevents the return of a verdict, re-prosecution violates the Double Jeopardy Clause unless the defendant has either consented to the mistrial or the court determines that a mistrial was a manifest necessity. *Glover v. Eighth Judicial Dist. Court*, 125 Nev. 691, 709, 220 P.3d 684, 696 (2009).

*The totality of the circumstances demonstrate that Granada-Ruiz impliedly consented to mistrial*

Granada-Ruiz argues that he never expressly consented to a mistrial and never had an opportunity to object because the district court stated that the decision of whether a mistrial was necessary was within the court's sole discretion. Citing *Benson v. State*, he also asserts that when looking to the totality of the circumstances, he did not impliedly consent to a mistrial. 111 Nev. 692, 895 P.2d 1323 (1995). We disagree.

Consent to mistrial need not come in the form of a motion from the defendant or verbal approval, but may be implied from the totality of the circumstances. *Benson,* 111 Nev. at 696-97, 895 P.2d at 1326-27 (determining that the totality of the circumstances did not demonstrate the defendant's implied consent where the defendant disputed the prosecution's basis for seeking a mistrial, defense counsel's initial statement that he would not oppose a mistrial was made without consulting the defendant and while under attack from the prosecutor and under threat of contempt, the court did not explore other options before declaring a mistrial, and there was no manifest necessity for a mistrial). Among the facts we look to in considering the totality of the circumstances under *Benson*, this court has previously recognized a defendant's failure to object or argue against a court's declaration of a mistrial as a circumstance that may indicate implied consent. *See Gaitor v. State*, 106 Nev. 785, 788, 801 P.2d 1372, 1374 (1990) (holding that "[t]he failure of defense counsel to object or express an opinion to the district court regarding the propriety of the mistrial implied consent and indicated tacit approval" when the circumstances otherwise supported the district court's conclusion that there was a manifest necessity for a mistrial), *overruled on other grounds by Barone v. State*, 109 Nev. 1168, 866 P.2d 291 (1993). However, consent cannot be implied based on a failure to object where the defendant was not given an opportunity to object or where the circumstances made objection an impracticability. *United States v. Jorn*, 400 U.S. 470, 487 (1971); *Benson,* 111 Nev. at 698, 895 P.2d at 1327-28.

Here, it is clear that Granada-Ruiz never expressly consented to the declaration of mistrial. However, the totality of the circumstances support the conclusion that Granada-Ruiz impliedly consented to a mistrial.

Granada-Ruiz did not object to the declaration of a mistrial. Instead, when informed about the juror's notes to the district court, defense counsel stated that external research entering the deliberation room was an inherent problem, which may have "infect[ed] the jury." When asked by the district court to express an opinion on the appropriateness of declaring a mistrial, Granada-Ruiz and defense counsel seemed amenable to it, and after the canvassing of the foreperson, defense counsel stated that she tended to agree with the district court that the juror's external research both permeated and derailed the deliberations and concerned issues central to trial. Implied consent to a mistrial has serious implications and we do not presume it lightly, *Benson*, 111 Nev. at 696-97, 895 P.2d at 1327, and thus, while some indication of opposition would have weighed on our analysis in considering the totality of the circumstances, it was not present here.

Further, the facts here bear no similarity to situations in which the trial court declared a mistrial without warning and defendants were not given an opportunity to object or in which objection was impracticable. Unlike *Jorn*, in which the United States Supreme Court held that finding implied consent was inappropriate because the defendant was not given an opportunity to object where the trial judge declared a mistrial with no prior warning or consultation with the parties, 400 U.S. at 487, Granada-Ruiz was invited to present his views on whether a mistrial was appropriate, and the district court took steps to investigate the impact of the improper research. Additionally, unlike *Benson*, in which this court concluded that it was inappropriate to interpret defense counsel's acquiescence to a mistrial as consent because defense counsel had previously argued against the State's motion for a mistrial, and his continued opposition was made impracticable by the openly hostile exchanges between defense counsel,

prosecution, and the court, 111 Nev. at 698, 895 P.2d at 1328, the basis for a mistrial here was jury misconduct that was brought to the district court's attention by the jury, not a prosecution motion, and the proceedings to resolve that issue were not hostile, but instead driven by appropriate inquiry regarding the integrity of jury deliberations.[3]

Finally, the district court's statement that the decision regarding whether to declare a mistrial would be within its own discretion did not absolve Granada-Ruiz from objecting to the mistrial. The power to order a mistrial rests with the district court but that does not mean counsel need not advocate its positions, and concluding otherwise would contradict this court's holding that it is appropriate to consider a defendant's failure to voice any opposition when determining whether a defendant consented to a mistrial. *See Gaitor*, 106 Nev. at 788, 801 P.2d at 1374. Here, the district court asked for the parties' opinions on whether the juror misconduct permeated the deliberations and impacted the jury's ability to render an impartial decision, and defense counsel stated that she tended to agree with the district court's assessment that it did. Granada-Ruiz was in the courtroom when the jury was canvassed on the matter, and the district court informed him of the misconduct and the possibility of a mistrial.

---

[3]Granada-Ruiz also argues that *Benson* held the failure of defense counsel to discuss the consequences of mistrial with the defendant weighed against a finding of implied consent. While the absence of consultation was a factor supporting the lack of implied consent in *Benson*, 111 Nev. at 698, 895 P.2d at 1328, it was one of several factors considered under the totality of the circumstances. Moreover, it was considered in the context of how hurried and hostile the courtroom atmosphere had become when the court declared a mistrial, *id.*, unlike here, where the district court canvassed jurors, asked for counsel's input, and considered Granada-Ruiz's frustration with the jury misconduct before declaring a mistrial.

While counsel and Granada-Ruiz expressed frustration with what had transpired at this late stage in the trial, they did not present any objection to the declaration of a mistrial despite being given ample opportunity to do so. These circumstances support that Granada-Ruiz impliedly consented to the district court's declaration of a mistrial, and double jeopardy does not bar a second trial.

*The district court did not abuse its discretion in finding manifest necessity to declare a mistrial*

Even in the absence of implied consent, the district court did not abuse its discretion in finding manifest necessity to declare a mistrial. Granada-Ruiz argues that the district court employed an incorrect legal standard, as not every exposure to improper research requires a mistrial. Granada-Ruiz further submits that less drastic remedies would have been appropriate, and there was no support for the district court's conclusion that impaneling an alternate juror would not have been adequate. We disagree.

A sua sponte declaration of a mistrial does not create a bar to re-prosecution on the same charges when there is manifest necessity to declare a mistrial. *United States v. Perez*, 22 U.S. 579, 580 (1824). The finding of manifest necessity is reviewed for an abuse of discretion. *Glover*, 125 Nev. at 703, 220 P.3d at 693. In this context, the abuse of discretion standard turns on the question of whether the finding of manifest necessity is one "a rational jurist could have made based on the record." *United States v. Chapman*, 524 F.3d 1073, 1083 (9th Cir. 2008). The deference extended to the trial court varies based on the circumstances of the case, but great deference is given when the district court declared a mistrial based on its own finding of potential juror bias. *Id.* at 1082; *United States v. Jarvis*, 792 F.2d 767, 769 (9th Cir. 1986). Our purpose on review is to halt irrational decisions, thus we "focus on the procedures employed by the judge," and "[a]

 

determination of manifest necessity may be upheld even if other reasonable trial judges might have proceeded with the trial despite the error." *Chapman*, 524 F.3d at 1082. In determining whether the trial court exercised sound discretion in declaring a mistrial, we consider whether the court: (1) allowed both parties to voice their opinions on the necessity of a mistrial, (2) considered alternatives to a mistrial, (3) deliberately arrived at the decision to declare a mistrial, and (4) declared the mistrial based on evidence in the record. *Id.*; *Glover*, 125 Nev. at 710, 220 P.3d at 697.

The record shows that the district court acted within its sound discretion in declaring a mistrial. First, the district court solicited the opinions of both parties on three separate occasions following the discovery of the juror misconduct. Thus, both parties had multiple opportunities to apprise the district court of their positions regarding an appropriate remedy and to provide caselaw they found to be instructive.

Second, the record demonstrates the district court considered alternatives to declaring a mistrial. It expressly stated that its course of action would depend on what it discovered while canvassing the jurors. The transcript of the canvassing likewise supports the district court's determination that Juror No. 3's research had permeated the jury room and the jurors did not return to the jury instructions during deliberations, and thus also supports the district court's resulting conclusion that employing alternate jurors would be inadequate.

Third, the district court was deliberate in arriving at its decision to declare a mistrial. Implicit in this factor is whether the district court applied the appropriate legal standards in arriving at its decision. *See, e.g., Glover*, 125 Nev. at 716, 220 P.3d at 701. The primary indicator of behavior that is not deliberate is where the mistrial is declared suddenly,

without a hearing, and without giving thought to alternatives. *Chapman*, 524 F.3d at 1082 (citing *United States v. Bates*, 917 F.2d 388, 396 (1990)). Here, the district court not only allowed the parties to present arguments as to the appropriateness of declaring a mistrial, but canvassed the foreperson and the offending juror in order to evaluate the extent to which the improper research had tainted deliberations.

Relatedly, the record does not support Granada-Ruiz's argument that the district court employed an incorrect legal standard in which any spread of the improper research would constitute manifest necessity. The depth of the district court's investigation into the impact of the improper outside influence on the jury's deliberations is reflected in the progression of the district court's questioning of the jurors and its findings of fact in that regard. The district court's determination that the improper research had been shared amongst the jurors and consumed deliberations to the extent that the jury never returned to the proper statements of law in the jury instructions is supported by the record.[4] Thus, we see no grounds on which to conclude that the district court's factual findings were clearly

---

[4]Granada-Ruiz contends that the improper research introduced by Juror No. 3 did not differ from the jury instruction, and consequently could not have tainted jury deliberations. Juror No. 3, however, was not able to articulate the legal conclusions he drew from his research, except to state that they differed from what he recalled from trial or understood from the jury instructions. Regardless, his outside research led to prolonged disagreement in the deliberation room, and the fact that the other jurors opposed the introduction of Juror No. 3's improper research does not change the fact that the jury discussed it without returning to the jury instructions. Thus, Granada-Ruiz's argument in this regard does not warrant a different outcome. *See Chapman*, 524 F.3d at 1082 ("A determination of manifest necessity may be upheld even if other reasonable trial judges might have proceeded with the trial despite the error.").

 

erroneous. *See Meyer v. State*, 119 Nev. 554, 561, 80 P.3d 447, 453 (2003) ("Absent clear error, the district court's findings of fact will not be disturbed.").

Finally, the decision to order a mistrial was based on evidence in the record. Two notes from jurors revealed that improper outside research was considered in deliberations and Juror No. 3's stated inability to follow the law. The district court's canvass of the jury revealed that the improper research had replaced the jury instructions as the center of jury deliberations, and the jury did not return to the proper statements of law in deliberating on a verdict. The district court relied on this evidence in finding manifest necessity to declare a mistrial.[5] Accordingly, we conclude that the district court did not abuse its discretion in finding a manifest necessity to declare a mistrial.

---

[5]Granada-Ruiz also argues that the trial court was required to canvass each of the jurors to determine the improper research was prejudicial and the replacing the offending juror would be an inadequate remedy. While the district court must determine whether the improper research had an effect on the jury, *Bowman v. State*, 132 Nev., Adv. Op. 74, 387 P.3d 202, 206 (2016), we have never held that a court must canvass each of the nonoffending jurors to determine whether each, individually, was effected by the improper research. Here, the district court determined the effect of the improper research on the jury by canvassing Juror No. 3 and the foreperson and discovering that the improper research had dominated deliberations and prevented the jury from applying the proper statements of law provided in the jury instructions.

 

## CONCLUSION

We conclude that the district court properly denied Granada-Ruiz's motion to dismiss. A second prosecution following the district court's declaration of mistrial is not prohibited by double jeopardy as the totality of the circumstances, which include (1) Granada-Ruiz's lack of objection to a mistrial, despite having the opportunity to raise an objection; (2) his agreement with the court's analysis of the juror misconduct; and (3) the possibility of mistrial being raised sua sponte, support Granada-Ruiz's implied consent to mistrial. Further, the district court did not abuse its discretion in finding manifest necessity to declare a mistrial, as the court heard the positions of both sides; the record supports that the court explored other options, such as replacing Juror No. 3; the district court was deliberate in investigating the juror misconduct and evaluating the need for mistrial; and the basis for finding manifest necessity was reflected in the record. Therefore, re-prosecution is not barred by double jeopardy and accordingly we deny Granada-Ruiz's petition for a writ of mandamus.

_____, J.
Cherry

We concur:

_____, C.J.
Douglas

_____, J.
Gibbons

_____, J.
Pickering

_____, J.
Hardesty

_____, J.
Parraguirre

_____, J.
Stiglich

Supreme Court
of
Nevada

(O) 1947A